## Robbins *against* Harvey.

In *assumpsit* founded on a *quantum meruit* for services rendered as attorney and counsellor at law, the plaintiff offered in evidence the deposition of *W.*, a counsellor at law, containing a copy of the plaintiff's bill of particulars, and a statement, in the hand-writing of the plaintiff, and subscribed by him, shewing the circumstances under which the services in question were rendered, and the final success of the defendant, and concluding with the declaration, that such success was owing to the plaintiff alone, accompanied by the testimony of *W.*, that the amount charged was reasonable, under the circumstances stated, and not more than was usually charged for like services where the services in question were rendered : Held, that although the testimony of *W.*, by itself, was unexceptionable, yet the plaintiff's statement and declaration were inadmissible, and the deposition, vitiated, by their insertion, ought to be rejected.

In such action, the plaintiff offered also the testimony of *H.*, a counsellor at law, to prove what compensation he had received, pursuant to a previous contract, for services rendered to a relative of the defendant, with a view to the recovery of a similar claim : Held, that such evidence was inadmissible, the services rendered not being the same, and the amount of compensation being determined, not by what they were reasonably worth, but by a previous special agreement.

In such action, the plaintiff offered also testimony, to prove, that the defendant, when the plaintiff engaged in her business, was poor, so that his ultimate remuneration depended wholly on her recovery : Held, that such evidence was irrelevant and inadmissible, the only question being what was the worth of the services rendered, which could not be affected by the poverty of the defendant·

The statute of limitations regarding book debts, as it existed before the revision in 1821, as well as since, is applicable, not to the form of action merely, but to the nature of the indebtedness.

Therefore, where an action of *assumpsit* was brought in 1822, for services ordinarily charged on book, rendered in 1811, it was held, that the plaintiff was barred of a recovery.

Under the general issue in *assumpsit*, the defendant cannot give in evidence the statute of limitations; but, if he would avail himself of it, he must plead it specially.

If the defence consists of special matter arising *subsequently* to the original cause of action, it must be pleaded specially ; but if it shews, that there never was any right of action, it may be proved under the general issue.

This was an action of *indebitatus assumpsit* for fees as counsellor and solicitor, with a *quantum meruit* count, and the common money counts ; commenced in *January*, 1822.

The cause was tried at *New-London, October* term, 1823, before *Peters*, J.

The defendant pleaded *non assumpsit*, with notice that under this plea, one ground of defence would be, that the plaintiff's right of action did not accrue within six years next before the commencement of the suit.

The plaintiff produced the following bill of particulars.

1811.   To fees for retainer in the case of a claim made by defendant, as heir at law to *James Mowry*, against *John Richards*, as administrator to said *Mowry*.   $50 00

To fees for the examination and investigation of the merits of said claim, and for instruction to the counsel employed in *Boston*, for bringing the suit or suits.   75 00

To fees for correspondence with said counsel, from the commencement to the end of said suits, (about seven years) relating to all the difficulties, as they occurred, either as to law or fact.   150 00

To fees for intermediate meetings and consultations with said counsel at *Providence*.   50 00

To fees for attending the taking of all the depositions, which were taken in said suits, for the defendant and against her, enquiring out and procuring the attendance of witnesses, &c.   200 00

To disbursements in said suits, in various ways, in postages, in advances to witnesses, in my own expenses, &c.   50 00

$575 00

The plaintiff, who was a counsellor and attorney at law, residing at *Newport*, in *Rhode-Island*, claimed, that he had rendered the services stated in his bill of particulars, under the following circumstances.   A person by the name of *James Mowry*, had died in the *East-Indies*, leaving an estate estimated at 40,000 dollars; and one *Richards* had arrived in *Massachusetts*, in possession of the property.   The defendant was the only sister, and an heir at law, of *Mowry*; who had left this country many years ago, for the *East-Indies*, and there acquired his estate.   She was wholly destitute of property to enable her to prosecute her claim.   The plaintiff, without any agreement as to the amount of compensation, which he should receive, undertook, at her request, to investigate this claim, with no other

prospect of remuneration for his services, owing to the entire poverty of the defendant, than what he might receive from the estate expected to be recovered. Suits for the recovery of such estate were instituted, in 1812, in the state courts of *Massachusetts* ; and on the termination of these, in 1814, other suits were commenced in the circuit court of the *United States*, both at law and in equity, and were continued until the year 1819, when they terminated successfully for the defendant, and she recovered more than 20,000 dollars. During the continuance of these suits, the plaintiff acted as the attorney and counsellor of the defendant. The making out of her claim was attended with great difficulty, owing to its being an antient transaction, and to its being resisted on the ground that *Mowry*, if related to the defendant at all, was the illegitimate son of her mother, born after the death of her father.

The defendant insisted, that the plaintiff's charges were excessive.

The plaintiff, to prove that he was entitled to recover the whole amount of fees demanded, offered the deposition of *John Whipple*, Esq., a counsellor at law in *Providence, R. I.*, containing a copy of the plaintiff's bill of particulars, and a statement of the circumstances before-mentioned, concluding with the declaration, that the defendant's final success was owing to the defendant alone ; such statement being in the hand-writing of the plaintiff, and subscribed by him, accompanied by the *affidavit* of *Whipple*, that the amount charged was reasonable, under the circumstances stated, and not more than was usually charged for the like services in *Rhode-Island*, where the services in question were rendered. To the admission of this deposition the defendant objected ; but the judge overruled the objection, and admitted the deposition as evidence of the value of the services therein specified.

In further proof of the amount of compensation claimed by the plaintiff for his services, he offered the deposition of *William Hunter*, Esq. of *Newport, R. I.*, a counsellor at law, in the following words : " I was consulted by Mrs. *Harvey's* nephew, her brother's son, relative to his father's or family's claim to part of the funds in Mr. *Richards'* hands. This application was made in the last stage of the controversy, after the principal arguments had been made. My compensation was fixed, by a previous contract ; and a part of the compensation was for enabling Mr. *Harvey* to take out letters of administration in *Boston*. The amount was upwards of 300 dollars ; which was

New-London, paid cheerfully, and without the smallest objection." To the
July,    admission of this evidence the defendant objected; but the
1824.    judge admitted it.

Robbins
v.
Harvey.

The plaintiff claimed, that he was entitled to more than or-
dinary fees for the services rendered, on the ground that the
defendant, at the time of the plaintiff's engaging in her business,
was poor, and that his ultimate remuneration depended wholly
on her recovery; and in support of this claim, he offered evi-
dence of her poverty at that time, and until the termination of
the suits. To the admission of this evidence, for the purpose
stated, the defendant objected; but the judge admitted it.

The plaintiff, further to establish his right to recover the full
amount of his charges, offered evidence, that he was eminent
and of high standing in his profession, as a counsellor and at-
torney at law. To the admission of this evidence the defend-
ant objected; but the judge admitted it.

No evidence having been offered under the money counts,
the defendant claimed, and offered evidence to prove, that the
charges of the plaintiff for his services were such as are ordi-
narily charged on book; and that more than six years had elaps-
ed, before the commencement of this suit, since the plaintiff's
right of action for these services accrued. The defendant,
therefore, prayed the judge to instruct the jury, that if they
should find the facts as claimed by her, the plaintiff was barred
of a recovery in this action. The judge neglected so to in-
struct the jury; and the plaintiff obtained a verdict.

The defendant thereupon moved for a new trial, on the
ground of the admission of improper evidence offered by the
plaintiff, and for the want of a proper direction to the jury.

H. Strong, in support of the motion, contended, 1. That the
deposition of Whipple, containing the plaintiff's statement of
his services, in his own hand-writing, and signed by him, was
inadmissible. The plaintiff had voluntarily adopted a form of
action, which excluded his own testimony and that of the de-
fendant; and he had no right, through the medium of another's
deposition, to introduce his own statement relative to the merits
of the cause. If this course may be pursued, each party, in
any form of action, may get his own partial and coloured, if
not fabricated statement, before the jury, and thus pervert the
administration of justice.

2. That Hunter's testimony, as to the compensation receiv-
ed by him for certain services, was not evidence in this case.
In the first place, those services were rendered in other suits;

they related to other matters; were dissimilar; and furnished no rule for estimating the value of the plaintiff's services. In the next place, *Hunter's* services were rendered under a special contract as to the amount to be paid; which would, of course, be determined, by such contract, and not by the value of the services.

3. That the testimony offered to prove the defendant's poverty was inadmissible; as the law implies the same promise, whether the party be rich or poor. Is the plaintiff to receive a compensation for his services in the inverse ratio of the defendant's ability to pay? Would the defendant be permitted to shew, (if such were the fact) that she was rich, for the purpose of diminishing the plaintiff's claim? The value of the services rendered, is the only rule of damages; and this is not affected, by the wealth or poverty of the party, who had the benefit of them.

4. That no question being made as to the skilful or unskilful manner in which the plaintiff had served the defendant, the evidence, as to the plaintiff's professional character, was not admissible. In such a case, could the defendant shew the want of *eminence and high standing*, as a defence?

5. That in an action of *assumpsit* for services ordinarily charged on book, the plaintiff is barred of a recovery, after six years. The statute relates, not to the form of action, but to the nature of the debt. *Stat.* 102. *tit.* 25. *c.* 2. ed. 1808. *Rev. Stat.* 310. *tit.* 59. *s.* 3. This was admitted, by able counsel, *arguendo*, in *Edwards* v. *Nichols*, 3 *Day* 19. If the law were otherwise, every out-lawed book debt might be recovered, by changing the form of action.

6. That it was competent for the defendant, under the general issue, *with notice*, to avail herself of the statute of limitations. *Stat.* 42,3. *tit.* 2. *s.* 30.

*Goddard*, contra, contended, 1. That the deposition of *Whipple*, as to the value of the services, upon a case stated, was admissible. This was the opinion of a professional man as to the value of services within the line of his profession, upon a set of facts, stated, or supposed, for the purpose of taking his opinion thereon. The statement assumed the facts to be true, for this purpose only. If the plaintiff failed to make out such a case on trial, the statement would go for nothing. 1 *Phill. Ev.* 209. *Thornton* v. *The Royal Exchange Assurance Company*, *Peake's Ca.* 25. *Goodtitle* d. *Revett* v. *Braham*, 4 *Term Rep.* 498.

*New-London,*
*July,*
*1824.*

Robbins
*v.*
Harvey.

2. That *Hunter's* testimony was admissible and proper, to shew what professional services were worth in *Rhode-Island.*

3. That the evidence adduced by the plaintiff, to shew under what circumstances he undertook the business in question, was admissible. The action is *assumpsit* for what the plaintiff *reasonably deserved to have* for his services. To form a correct opinion on this subject, all the circumstances attending the transaction should be known Of the weight and effect of these circumstances the jury were the proper judges. It would be going very far to say, that they must not hear the evidence.

4. That evidence of the plaintiff's standing in his profession, was properly received. This was the best criterion of the value of his services. Would not *Hamilton*, or *Dexter*, or *Pinkney*, or *Harper*, reasonably deserve to have a greater compensation for arguing a cause, than an attorney of merely ordinary skill and capacity?

5. That the plaintiff was not barred, by the statute of limitations. In the first place, the services in question, in the state where they were rendered, are not ordinarily charged on book. Secondly, if they were, or if they had been rendered in *Connecticut*, the remedy by action of book debt only, would be barred. The statute regards the form of the action, and not the nature of the demand. *Stat.* 102. *tit.* 25. *c.* 2. (ed. 1808.) The only intimation to the contrary, is the apparent concession of counsel, in *Edwards* v. *Nichols*, 3 *Day* 19. which amounts to nothing; for it was made, not only without prejudice to their cause, but obviously with a view to advantage. Thirdly, "book debts," mentioned in the statute, mean debts actually charged on book, and not merely claims, which may be, or ordinarily are, charged on book.

6. That if the case were within the statute of limitations, still the defendant could not avail herself of it, without pleading it specially. This she has not done.

HOSMER, Ch. J. The plaintiff has brought an action of *assumpsit* founded on a *quantum meruit*, for services rendered as an attorney and counsellor at law. At the trial, the court below admitted certain testimony, to the admission of which objections are made; and a question has likewise arisen, whether under the plea of *non assumpsit* the statute of limitations may be given in evidence.

I will first consider the objections to the evidence received. The testimony of Mr. *Whipple* as to the reasonableness of the

New-London,
July,
1824.

Robbins
v.
Harvey.

plaintiff's charges, and declaring, that they were not greater than was customarily paid for such services as were rendered, was unexceptionable ; but the written declaration in the plaintiff's hand-writing, and signed by him, incorporated with the deposition, and importing that the defendant's success in her suit was attributable solely to the plaintiff, ought not to have been received.   It was an unjustifiable mode of introducing the plaintiff's affirmation as testimony, in regard to an unproved fact, and which, from its nature, it was next to impossible to prove ; and was precisely as objectionable, as if it had been made to the jury, detached from testimony with which it had no connection.   The tendency of the proceeding, if it was not the motive, was to impress the minds of the jurors with prejudice, and stamp a colour on the case, injurious to a fair decision. The deposition, vitiated by such a statement and declaration as were made, ought to have been rejected.

The testimony of Mr. *Hunter* was utterly irrelevant.   His services had no identity with those of the plaintiff ; and the value of the one furnished no proof as to the worth of the other. Indeed, the evidence did not even prove, what was a reasonable compensation for Mr. *Hunter's* services.   They were rendered on a special agreement for a definite sum ; and the money paid, may have been much above, or much below, a *quantum meruit.*

The poverty of the defendant, when the services were rendered, had no bearing on the question between the parties. What was the worth of the plaintiff's services, was the only enquiry.   There is not, in the determination of this simple question, any calculation of chances or possibilities as to the remuneration of the creditor.   It has been an unheard of enquiry, until now, when goods are sold or services rendered, whether the debt is collectible, and to raise or depress the value of the things sold or done, by speculating and conjecturing on the probability of payment.   Indeed, the proposition that goods sold to a man of wealth, or services done for him, are to receive an estimate at their precise worth, but that the same demand against a poor man is to be greatly increased, from the moral probability of losing the whole or a part, is a flagrant absurdity.   It contradicts every dictate of the understanding, and every feeling of the heart, and is a perfect novelty, never received or acted upon in the intercourse between men.   The value of services is entirely detached from the consideration of their ultimate benefit to the person rendering them.   The value is

the benefit of the debtor, and the compensation the benefit of the creditor; and the questions respecting these subjects is necessarily as separate and disjoined, as is the person of him who does from him who receives. The enquiry under a *quantum meruit* is not, what benefits, immediate and remote, have been derived from the services. If it were, the preserving a man's life, by stopping a horse in full career, on request, might require as a compensation, a splendid fortune. But the question is what is the general worth of certain services rendered, or goods sold. I do not know, if Mrs. *Harvey* had been excessively rich, that an unusual compensation for services would have been demanded; but certain I am, if they were, they would not be as opposed to the common practice of mankind, as the attempt to tax her poverty, by a recurrence to the doctrine of chances. The evidence on the point in discussion was most palpably objectionable, and ought not to have been received.

Whether in an action of *assumpsit* for services ordinarily charged on book, the plaintiff is barred, after a lapse of six years from the time when the cause of action accrued; and if so, whether the statute *may* be given in evidence, under the plea of *non assumpsit ;* are the remaining subjects of enquiry.

By the former statute, (ed. 1808. *p.* 102. *tit.* 25. *c.* 2.) book debts, after the lapse of six years from the contracting thereof, were not recoverable in any court in this state. This law had its operation, not on the form of action, but *on the debt ;* such was its expression, and such its legal and practical construction. Vid. *Edwards* v. *Nichols,* 3 *Day,* 19. It follows from this, that if a creditor brings an action of *assumpsit* for articles ordinarily charged on book; the limitation of six years is equally applicable, as if the suit had actually been instituted on the book. The plaintiff's services having been performed in 1811, were barred by the then existing law, in 1817, several years before the commencement of his suit. This preceding law has never been altered in substance ; and by the act confirming the statute laws, as revised by the General Assembly, (*Stat. p.* 485.) it still remains in force. The existing law, by a construction of its expression in relation to the subject matter, was intended to limit the debt, and not the form of action. The words, " no action of account, of debt on book, or on simple contract, or of *assumpsit* founded upon any implied contract, or upon any contract in writing not under seal, except notes not negotiable, (*Stat. p.* 310. *tit.* 59. *s.* 3.) shall be brought but within six years after the right of action shall accrue," which is the present law,

place the cause of limitation, not on the form of suit, but on the <span>*New-London,* July, 1824.</span> nature of the indebtedness.    By " action of account, of debt on book or *on* simple contract," after examining the entire section of the act, I am of opinion, it was the intention to select one general criterion of limitation ; and that the law, rightly construed, reads in this manner ; " no action *founded on* account, *on* book, *on* simple contract, or *upon* any contract in writing." This deviation from the literal phraseology in the two first expressions, gives uniformity of construction, where no diversity can be reasonably intended, and is no strained interpretation of the preposition *of,* which sometimes signifies *concerning* or *relating to,* as in this phrase ; " all men have this opinion *of the man ;*" that is, *concerning* or *relating to* the man.    This discussion, however, I consider as of no moment ; for the plaintiff has brought an action of *assumpsit,* founded on implied contract ; and by the express words of the act, such suit is limited to six years after the right of action accrues.

<span>Robbins *v.* Harvey.</span>

That the statute of limitations cannot be given in evidence under the plea of *non assumpsit,* I deem to be unquestionable. If the substance of the issue were the test of this enquiry, it would be too unfounded even to be seriously raised, as it presents this question only, *did the defendant promise as the plaintiff has alleged ;* and if not, *did he promise within six years.* Under the plea of *non assumpsit,* if the plaintiff supports his declaration, it is no matter how far back the promise was made. The promise is all that is denied ; and nothing is set up, by the plea, to bar a recovery.    The defendant may waive the statute ; and if the substance of the plea is alone regarded, he does waive it.    But upon the plea of *nil debet,* whtch puts in issue the existence of the debt at the commencement of the action, the statute of limitations has been given in evidence, although the propriety of it seems to be doubted. *Anon.* 1 *Salk.* 278.    *Draper* v. *Glassop,* 1 *Ld. Ray.* 153.    1 *Chitt. Plead.* 476. *Duppa* v. *Mayo,* 1 *Saund.* 283. n. 2.    *Hodsden* v. *Harridge,* 2 *Saund.* 63. n. 6.

To be more particular : The statute of limitations cannot be given in evidence under the plea of *non assumpsit,* either at common law, or by the act of this state concerning pleadings, or by virtue of the proviso subjoined to it.

1. The statute is not evidence under *non assumpsit, at common law*    Under this plea, the evidence at first was confined to those defences, which proved, that the plaintiff *never* had any cause of action ; and matters of discharge were always required

*New-London,*
July,
1824.

Robbins
*v.*
Harvey.

to be pleaded specially. Upon this rule innovations were, from time to time, made, until at length most matters in discharge of the action, which show, that at its commencement, *the plaintiff had no subsisting cause of suit,* may be taken advantage of, under *non assumpsit.* But some defences there are, which *must* be pleaded specially; and in this class is the statute of 21 *Jac.* 1. *c.* 16. *s.* 3. from which our act of limitations is taken. 1 *Chitt. Plead.* 472. 473. *Duppa* v, *Mayo,* 1 *Saund.* 283. n. 2. *Hodsden* v. *Harridge,* 2 *Saund.* 63. *b. c. Puckle* v. *Moor,* 1 *Vent.* 191. *Lee* v. *Rogers,* 1 *Lev.* 110. *Gould* v. *Johnson,* 2 *Ld. Ray.* 838. In all other cases, except such as are within the above statute, and the 32 *H.* 8. *c.* 2. (*Foster's* case, 8 *Rep.* 64. *b.*) where the law requires the commencement of a suit within a limited time, it is the duty of the plaintiff to prove that he has complied with the terms of it. *Hodsden* v. *Harridge,* 2 *Saund.* 63. *c.* The late Ch. J *Swift,* in his *Digest, vol.* 1. *p.* 304. supposes, that one reason of the above diversity is, that the statute was made for the case of those who will take advantage of it; and that the court will not give a defendant the benefit of the law, unless he pleads it. He however subjoins, "perhaps the better reason is, that as the plaintiff may reply special matter to avoid the operation of the statute, the defendant ought to plead it, to give him an opportunity to set forth such special matter."

As at common law, the rule is incontestible, that the statute of limitations must be pleaded, and cannot be given in evidence under *non assumpsit,* I am brought to the next enquiry; has the act concerning pleadings made any difference? By this law it is enacted, that "the general issue of *not guilty, owe nothing, did not assume and promise,* &c. whereby the whole declaration is put in proof, may be made by the defendant; under which general plea the defendant shall have liberty, on trial of his cause, to give his title in evidence, or any special matter in his defence or justification, excepting only a discharge from the plaintiff, his accord, or some special matter, whereby the defendant, by the act of the plaintiff, is saved or acquitted from the plaintiff's demand in the declaration." *Stat.* 42,3. *tit.* 2. *s.* 30. For nearly a century, the recited law has been in continued existence. In the revision of 1750, it was digested from two former acts, passed in *May,* 1720, and in *October,* 1731. Until the year 1808, notice of the defence, in any case, was never required; and it is most unreasonable to suppose the legislature intended to sanction the admission of every thing, how-

ever unconnected with the issue, to be given in evidence ; and thus, at the moment of trial, to surprise the plaintiff, by matter of defence entirely unexpected. The practice under the statute being of frequent necessity, the court were, soon after its enactment, impelled to fix the limits of it, by an exposition pursuant to the legislative intent. On the one hand, the peril of special pleadings, requiring much nicety of management, and sometimes entangling justice in a net of forms, was suitably to be regarded ; and on the other, that there should not be such a departure from the substance of the issue as to produce surprise and inconvenience. The acts of the plaintiff, which the statute was considered as requiring to be pleaded specially, were such as were *ex post facto* ; (2 *Swift's Syst.* 208.) while those defences, which showed that he never had any cause of action, were uniformly made under the general issue. In *Ripley* v. *Fitch*, 1 *Root* 404. it was decided, by the superior court, that in an action on a promissory note, under the plea of *non assumpsit*, payment could not be given in evidence; as " this would be to surprise the plaintiff, when he was prepared only to prove the promise." Thus the letter of the statute was not regarded ; but the court restrained it, in order to promote that justice and convenience, which was supposed to be the object of the legislature. And it is remarkable, that the evidence at common law, under the plea of *non assumpsit, now* held to be admissible, was not at that time received by the court. In the case of *Candy* v. *Twichell*, 2 *Root* 123. duress and imposition in order to avoid a receipt, were admitted in evidence pursuant to the case of *Clark* v. *Bray, Kirby* 237., and on this assigned reason, "*for it goes directly to disprove the obligation or receipt.*" This court, in an action brought on a promissory note, under the plea of *non assumpsit*, permitted *usury* to be given in evidence. *Culver* v. *Robinson*, 3 *Day* 68. ; and in giving the reasons of the judgment, drew the line, by which the statute in question was to be construed, with great accuracy. " The special matter, which must be pleaded, is such as arises *subsequent* to the plaintiff's demand, and which saves or acquits the defendant from a right of action, which once existed against him ; whereas usury evinces a total want of any ground of action originally, *and may therefore* be given in evidence under the general issue." Here, then, we find the principle correctly stated, and promulged by the court, that definitely settled the law. If the defence consists of special matter arising *subsequent* to the original cause of action, it *must* be pleaded spe-

*New-London,*
*July,*
*1824.*

Robbins
*v.*
Harvey.

cially; but if it evinces that there never was any right of action, it may be proved under the general issue. That the defence, by virtue of the statute of limitations, is founded on a fact, happening posterior to the existence of the cause of action, and that it admits the right of suit formerly to have existed; are propositions incontrovertibly clear. Conformably with the principles adopted in the cases cited, the defence must be pleaded specially.

The fact, that the law of limitation in question, has ever been taken advantage of under a special plea, and never under the general issue, I believe to be unquestionable, and within the knowledge of every member of the bar; and I can truly say, that the attempt to give the law in evidence under *non assumpsit,* so far as my knowledge extends, is now made for the first time. There are cases turning on different questions, which shew what the practice has been. *Hull* v. *Minor,* 2 *Root* 223. *Smith* v. *Huntington,* 2 *Day* 563. *Bound* & al. v. *Lathrop,* 4 *Conn. Rep.* 336. And the late Ch. J. *Swift,* in his *Digest, vol.* 1. *p.* 304 lays it down as a *well settled principle,* that if the defendant would take advantage of the statute of limitations, he must plead it. The reasons assigned are, because the defendant may waive the law, and shall be taken to have waived it, unless he insists on it by plea; and more especially, because the plaintiff may reply special matter to avoid its operation. The learned Judge, whose long experience, undoubtedly, made the above, as a matter of practice, perfectly familiar to him, may be considered as attesting to it, and to the construction of the statute by the court. A different exposition, even with notice of the defence, would be highly inconvenient. Until the moment of trial, the defendant could never anticipate on what the plaintiff would place his reliance. Whether he founds himself on lunacy, coverture, new promise, or other fact invalidating the operation of the statute, the defendant is liable to be taken by surprise, and the interests of justice to be defeated.

It is too late to recur to the act, and to settle the construction of it, as being a novelty, when nearly a century bears evidence to its meaning, in the practice of the bar, and a sanction of that practice by the courts. But were I impelled to this unnecessary task, I should, without hesitation, require the law to be pleaded specially, in order to fulfil its object, and to prevent the most palpable inconvenience.

Lastly, the statute of limitations is not evidence under *non*

*assumpsit*, by reason of the proviso subjoined to the statute <span>New-London, July, 1824.</span>
regulating pleadings.

<span>Robbins v. Harvey.</span>

By the proviso referred to, it is declared, "that the defendant *shall not give in evidence*, under the general issue, any special matter, which, by the rules of the common law, ought to be pleaded specially, unless at the time of making his plea, he gives notice thereof in writing, stating such special matter. *Stat.* 43. By some, it has been supposed, that if notice is given of the intended defence, the defendant may, by virtue of the above proviso, give in evidence under the general issue, *any* special matter, which, by the rules of the common law, ought to be pleaded. This, undoubtedly, is a misconstruction of the proviso. It expounds the clause as if it had *positively* enacted, that, on notice, any special matter might be given in evidence; and thus it converts a *negative* expression into a *positive* enactment, and entirely mistakes the object of the provision. The proviso, neither in its expression nor intendment, *enlarges* the antecedent enactment, but, in both particulars, *restrains and nullifies it*, unless notice in writing shall be given. The words of the proviso are in *the negative*. The law, having imparted the right of adducing certain evidence under the general issue, comes in with its negation, and says, *this right you shall not have*, unless you comply with the prerequisite of notice. The precise object of the proviso was not, in any event, to extend the law, but, by the requisition of a condition precedent, to prevent surprise on the plaintiff, by the adduction of evidence not clearly applicable to the plain meaning of the issue. Thirty years since, Ch. J. *Swift*, in his "*System* of the Laws of *Connecticut*," after having eulogised the statute in its enactment concerning pleading, (*vol.* 2. *p.* 207, 208.) particularly, in its extension of the right of evidence under the general issue, very appositely observed, that "while we approve of the advantages resulting from this mode of pleading, we ought to state the only inconvenience to which it is liable." "On the general plea, the plaintiff cannot tell what is the point of defence on which the defendant relies, until he comes to the exhibition of his proof in the course of the trial, when the plaintiff may be surprised with some unexpected proof, which he might have counteracted, *had he known*, in due season, that the defendant intended to avail himself of such special matter." To supply this *desideratum*, the supreme court of errors, in the year 1808, promulged a general rule, requiring notice in writing "where the defendant pleads the general issue, and intends to rely on a

*New-London,*
July,
1824.

Robbins
*v.*
Harvey.

defence, which, by the rules of the common law, ought to be spread on the record, by special pleadings." This rule, which, in practice, was found extremely beneficial, at the late revision of the law, was incorporated into the act concerning pleadings, by the pen of Ch. J. *Swift.* After this, he compiled his *Digest,* in which he asserts, as a rule of practice, that the statute of limitations must be pleaded, and cannot be given in evidence under the general issue. 1 *Swift's Dig.* 304. On the whole, it is unquestionable, that the proviso contains no enlargement of the right of pleading, but is a restraint on power before delegated, unless on compliance with a specified condition.

PETERS and BRAINARD, Js , were of the same opinion.

BRISTOL, J., thought, that under *non assumpsit with notice,* the statute of limitations might be given in evidence. On the other points, he concurred with the Chief Justice.

New trial not to be granted.