William B. Parker, plaintiff in error, *vs.* Samuel D. Irvin, defendant in error.

1. To avail himself of the statute of limitations, the defendant must plead it.
2. There being evidence to sustain the verdict in this case, a new trial will not be granted, on the ground that the verdict is contrary to evidence.

Warner, Chief Justice, dissented.

Attorney and client. Suit for fees. Commissions. Before Judge Cole. Bibb Superior Court. October Term, 1871.

Samuel D. Irvin brought assumpsit against William B. Parker for $600 00 alleged to be due as attorney's fees. The defendant pleaded the general issue.

It appeared from the evidence, that in June, 1866, defendant placed in plaintiff's hands for collection an execution issued from Dougherty Superior Court, on January 20th, 1857, in favor of defendant against Henry A. Scott, for the sum of $950 00, principal, and ...... dollars, interest, to January 1st, 1855, with interest from January 1st, 1855; that plaintiff learned from sources of information accessible only to himself, that Scott had a contract with the Southwestern Railroad to cut stringers, by which he was realizing a large sum per month, and that by serving a process of garnishment upon

the railroad, plaintiff could enforce the collection of the *fi. fa.;* that Scott promised plaintiff to settle Parker's claim in three payments, two of $600 00 each, and one of $557 00; that on October 25th, 1866, plaintiff collected from Scott $600 00, of which amount he retained $100 00; that on December 8th, 1866, Parker wrote to plaintiff the substance of an interview and settlement he had had with Scott, the letter concluding as follows: "Resulting in my getting from him two drafts, or rather orders, for my certain balance, payable 25th January and the 25th of February, on the Southwestern Railroad Company; and for which two orders, executed in my presence, and placed in my hands, I was to suspend for the present all further legal proceedings by so directing you, which I now do, until further advised by me to proceed, if necessary, henceforth;" that on December 22d, 1866, plaintiff replied to said letter as follows: "I have been too much engaged in our Court since receiving yours, in reference to adjustment of claim on Henry A. Scott, to reply. You have a right to do as you please with your own, and, of course, what suits you, suits me. I only work for my clients' interest, and in that case, felt perfectly independent of Dr. Scott, and he knew I had him where I could force him to do as I desired, and hence his approaching you in the way that he did. If you ever realize on those drafts, I shall congratulate you. As you have taken the case out of my hands after I had it secured, I shall expect compensation, of course, proportioned to the service rendered;" that plaintiff himself never collected on said *fi. fa.* more than $600 00. Richard K. Hines, Esq., and Richard Hobbs, Esq., attorneys at law, testified that Scott was insolvent; that the usual charges on an insolvent claim were $50 00 retainer, and from ten to fifteen per cent. upon the amount collected; that collecting $1,800 00, the full amount of an old debt in the face of relief, stay law and other repudiating Acts, is worth at least $450 00. William E. Smith, Esq., an attorney, testified as to the insolvency of Scott; that all collections from him was so much made; that he cannot state positively what would be a reasonable fee on a collection from Scott. Wash-

Parker *vs.* Irvin.

ington Poe, Esq., an attorney, testified that, under the circumstances, $300 00 would be a reasonable fee for securing the claim.    James A. Nisbet, Esq., an attorney, testified that, under the circumstances, he would consider twenty per cent. a reasonable fee ; that in cases of great difficulty, where the defendant was insolvent, it was the custom to charge a considerably higher per cent. than in cases where these circumstances did not exist.    Several letters from plaintiff to defendant were introduced in evidence, unnecessary to be here set forth.    The garnishment affidavit, bond and summons were submitted to the jury.    No signature is attached to the copy summons, and the record fails to disclose that the process of garnishment sued out was ever served.

The following verdict was returned :  " We the jury find for the plaintiff $250 00, with interest from suit, exclusive of the $100 received."

The defendant in *propria persona* moved for a new trial upon the following grounds, to-wit :

1st. That the verdict of the jury is contrary to law and evidence.

2d. That the verdict is illegal, null and void in this, that the verdict was, as defendant has reason to believe, not in accordance with the views and convictions of the jurors of the right and justice between the parties, and was not unanimous, as the amount rendered for the plaintiff was not the result of calculation upon any correct basis whatever, the individuality of each juror being merged in a general aggregate mass by an early agreement, each juror giving his separate figures and adding them all, greatly diversified as to amounts, together, and dividing the whole by the number twelve, thus leaving private judgment, conscience and law not properly conformed to—some of said jurors proposing greatly different amounts, and some nothing—the final result, the amount in their verdict rendered, having been arrived at more by chance than otherwise.

The motion for a new trial was overruled by the Court, and plaintiff in error excepted and assigns said ruling as error.

Parker vs. Irvin.

L. E. BLECKLEY, for plaintiff in error.

B. & W. B. HILL, for defendant.

MONTGOMERY, Judge.

1. It is hardly necessary to elaborate the decision of the Court on the first point made in this case, that to avail himself of the statute of limitations, a defendant must plead it : *Code*, 3604.

2. The evidence shows that but for the services rendered by the plaintiff, (the defendant in error,) Parker would not have received his money. Several attorneys of high standing testify that the services rendered were worth from $300 00 to $450 00, or, to use the exact language of one of them, that under the circumstances, he would consider twenty per cent. a reasonable fee—one only putting it at as low as $300 00. The fact that Parker himself *received* the money directly from his debtor, can make no difference. By whose skill was the debtor forced to pay, is the controlling question. It must be a prejudiced mind, indeed, that can read the testimony and come to any other conclusion than that the steps taken and threatened by the attorney forced the payment of the entire debt, as well that collected by the attorney, as that collected by Parker. So the jury seemed to think, and there is abundant evidence to sustain their verdict.

Let the judgment be affirmed.

McCAY, Judge, concurring.

A majority of this Court are of opinion that there *is* sufficient evidence to support this verdict, and that under the rule so often asserted by this Court, the judgment of Judge Cole, refusing a new trial ought not to be disturbed. The evidence to our mind is conclusive that Mr. Irvin ought to be paid for the collection of all this money. It was a mere subterfuge for Parker to step in after Irvin had enclosed Scott so completely in his net that escape was impossible. The success of Mr.

Parker *vs.* Irvin.

Irvin in his undertaking to get that much money out of an insolvent debtor in these days, is not only to be admired, but ought to be paid for. It displayed a knowledge of human nature, of the law and of the man he had to deal with, and a skill in handling the means within his reach, that, considering the success of his movements, deserves a more than ordinary remuneration. The jury found on the testimony of three witnesses, all of whom testify that under the circumstances proven, his services were worth at least as much as the jury has found. The jury as well as this Court must go by the proof. If a smaller amount was the proper value, it should *have been proven.* This Court has no right to determine from its own knowledge of the value of work that the witnesses over-estimated it. But there is evidence in the record showing that Mr. Parker recognized the value of Mr. Irvin's services at about the same rate as that fixed by the jury. Mr. Irvin charged $100 00 for the first amount collected, and sent the balance to Mr. Parker. Parker took the money, found no fault with the charge, and was probably very well satisfied. Here was notice of Mr. Irvin's charge, and here was Parker notified of it, and finding no fault ,making no objection. The evidence is, to our minds, conclusive, as we have said, that Mr. Irvin's services and Mr. Irvin's skill and management procured the payment of this whole debt. He had forced Scott to promise to pay the debt by installments, in orders on the Southwestern Railroad Company. Scott had paid one installment, and with Irvin's hand still upon him, he tries his skill on Parker. He blusters—talks very independently—scares Parker, and gets two months indulgence from him, for at last that is about all the change that was made in the original agreement with Irvin, and it is to be noted that Parker, in order to keep Scott to his promise, still keeps the impending garnishment hanging over his head.

Altogether we think Mr. Parker has no ground to complain. By Mr. Irvin's skill, prudence and knowledge of the art of collecting money he has got a large debt, that all the testimony shows was apparently hopeless, paid, and he shows,

Parker *vs.* Irvin.

as it seems to us, a want of a proper consideration of the circumstances to refuse to pay what men skilled in such matters say it is worth.

WARNER, Chief Justice, dissenting.

This was an action brought by the plaintiff, as an attorney at law, against the defendant to recover an account of $600 00 for professional services, alleged to have been rendered the defendant in *collecting* an insolvent claim on one Scott for $1800 00. On the trial the jury found a verdict for the plaintiff, for the sum of $250 00, with interest from the commencement of the suit, exclusive of the $100 00, which the plaintiff had previously received from the defendant, making the sum of $350 00, for the services rendered in the case. The defendant moved for a new trial on the ground that the verdict was contrary to law and the evidence, and because the plaintiff's account was barred by the statute of limitations, which motion was overruled by the Court and the defendant excepted. It appears from the evidence of the plaintiff, that the defendant placed in his hands an execution in his favor, against Scott for about the sum of $1800 00, for collection in the month of June, 1866; that he learned from sources of information accessible only to himself, that Scott had a contract with the Southwestern Railroad to cut stringers, by which he was realizing a large sum per month, and that by garnisheeing the railroad company he could enforce the collection of the *fi. fa;* that he sued out a summons of garnishment against the railroad company in terms of the law, but which does not appear to have been served upon the railroad company. There is no positive evidence in the record that the plaintiff notified Scott that he had sued out the summons of garnishment, but it is a fair presumption from the facts disclosed therein, that he did so notify him. Scott promised the plaintiff, as the attorney of Parker, to settle his claim in three payments; two of $600 00 each, and one for $557 00. On the 25th October, 1866, the plaintiff collected from Scott $600 00; $500 00 of which was paid over to defendant, plaintiff retaining $100 00 in his hands.

In December thereafter, Parker, the plaintiff in *fi. fa.*, wrote to Mr. Irvin that he had met with Scott and negotiated a settlement with him for the balance due on the *fi. fa.*, Scott giving him his two drafts on the Southwestern Railroad Company, payable 25th January and 25th February next thereafter, and instructed Mr. Irvin, as his attorney, to suspend all further proceedings in the matter, unless advised differently hereafter. After the receipt of this letter, Mr. Irvin, on the 22d December, 1866, wrote to the defendant, Parker, "that he had a right to do with his own as he pleased, and of course what suits you suits me. If you ever realize on those drafts, I shall *congratulate you.* As you have taken the case out of my hands after I had it secured, I shall expect compensation, of course, proportional to the services rendered." There is no evidence in the record that the plaintiff secured any part of the debt, which remained due after · the collection of the $600 00, but on the contrary, the evidence is that Parker secured it.

The plaintiff introduced as witnesses W. Poe, Esq., J. M. Nisbet, Esq., Richard K. Hines, Esq., Richard Hobbs, Esq., and W. E. Smith, Esq., attorneys at law. Mr. Poe testified, that under the circumstances, he would consider $300 00 a reasonable fee for securing the claim. Mr. Nisbet testified, that under the circumstances, he would consider twenty per cent. a reasonable fee, that in cases of great difficulty, when the defendant was insolvent, it was customary to charge a higher per cent. The testimony of the other witnesses was substantially the same as to the value of the services under the circumstances, that is to say, the securing and collection of the full amount of the debt for the benefit of the plaintiff by the attorney, out of an insolvent debtor. The plaintiff in this case seeks to recover from the defendant, for professional services *actually rendered* in the *collection* of an insolvent claim, and there being no special contract, he can recover nothing more: *Code,* 441. The fundamental error on the trial, is in the assumption that an attorney at law is entitled to recover from his client for his professional services, in proportion, as

his client has been *benefited* by his services, instead of what the services actually rendered *were worth,* especially when the evidence shows that only one-third of the debt was collected by the plaintiff.    The money due on the *fi. fa.* was the property of Parker, the defendant, and his attorney who was employed by him to collect it had no legal right or claim to it. The attorney was entitled to be paid for the services *actually rendered* his client, whether the money due on the *fi. fa.* had been collected or not.    An attorney is entitled to recover from his client (in the absence of any special contract) for the professional services *actually rendered,* whether the client is successful in his suit or not.    The section of the Code before cited declares, " where no special contract is made, the attorney may recover for the services *actually rendered."*    In this case there was no special contract for the collection of the *fi. fa.* When it was placed in the attorney's hands for collection, he was legally bound to exercise all his professional skill and knowledge to produce that result; that was the object for which he was employed, and if he had failed to do so he would have been derelict in the discharge of his professional duty.    In the absence of any special contract to the contrary, Parker, the client, had the clear legal right to control his own debt, and to have made the settlement with Scott, if, in his judgment, it was for his interest to do so; and Mr. Irvin, in his letter of the 22d December, clearly recognized that right.    What services were *actually rendered* by Mr. Irvin in this case?    He sued out a summons of garnishment against the Southwestern Railroad Company, which was never served, obtained Scott's promise to pay Parker's debt in three installments, one of which only he collected, (to-wit:) $600 00, and paid the same to Parker, less $100 00, which he retained; wrote several letters to Parker about the claim, and that is all, so far as the record discloses.    There is no evidence in the record what those services *actually rendered* were worth.    The attorneys who testified in the case, stated that under *the circumstances,* they would consider $300 00, or twenty per cent., a reasonable fee.    What

Parker *vs.* Irvin.

were the circumstances on which they founded their opinion? The main circumstances appear to have been, that Scott was insolvent, and Parker got his money, two-thirds of which he collected himself, under the arrangement he made with Scott for its payment. This testimony does not prove what the services *actually rendered* by the plaintiff were worth, as the law requires. The opinion of the attorneys who testified in the case, was evidently based on the assumption that the plaintiff secured and collected *the whole debt*, whereas, the evidence in the record clearly shows that he only secured and collected one-third part of it, Parker himself, having secured and collected the other two-thirds. If Mr. Irvin had made a special contract with Parker to collect the *fi. fa.* for twenty per cent. on the amount, or for any other specific sum, and Parker had interferred and settled the same with Scott without his knowledge and consent, then Mr. Irvin, as his attorney, could have required him to pay the amount he agreed to pay. In other words, Parker could not defeat his right under his special contract, by a settlement of the claim; but there was no special contract, and the plaintiff can only recover, under the law, for the services actually rendered.

In my judgment, the verdict rendered by the jury in this case is contrary both to the law and the evidence. Under the law, the plaintiff was only entitled to recover for services *actually* rendered, and the evidence does not show what the services actually rendered in the case by the plaintiff were worth.

The law has wisely declared the rule in all cases where no *special contract* is made between attorney and client, and the Courts should enforce it. The object of the law was to prevent the introduction of just such hypothetical and speculative testimony, in relation to attorneys' fees, as was introduced on the trial of this case, and to confine the investigation to the services *actually rendered* by the attorney. The statute of limitations was not pleaded in the Court below, and therefore, could not properly be considered by the Court.

In view of the facts contained in the record and the law

applicable thereto, I am of the opinion that the judgment of the Court below should be reversed, and a new trial granted.