## ADAMS v. TUCKER.

6    393
26s 490

6    393
20   347

6    393
f33S 366

1. LIMITATIONS—PLEADING.
To render the statute of limitations available as a defense, it must be set up and relied on in the pleadings.

2. NONSUIT.
A nonsuit cannot be legally granted when the defensive pleadings contain an admission of some indebtedness and a promise to pay it.

3. LIMITATIONS—PAYMENT.
A debt barred by the statute of limitations may be revived by a new promise, which may be either expressed or implied. An implied promise is created by a clear and unqualified acknowledgment of a debt, and a payment on account of it is such an acknowledgment.

4. SAME.
Where a person is the maker of a note, and the joint maker of another,

a payment by him should, in the absence of a designation of its application, be credited to his individual indebtedness. Its application by the payee as a payment on the joint note would not suspend the running of the statute of limitations.

*Appeal from the District Court of Pitkin County.*

On the 23d day of February, 1893, appellee brought suit against appellant on the following promissory notes:

"$2,500.                              February 20, 1883.

" On or before October 30, 1883, after date I promise to pay to the order of L. R. Tucker, twenty-five hundred dollars at Colorado National Bank.   Value received, with interest at 12 per cent per annum.

" (Signed)          M. ADAMS."

On which were indorsements as follows : " Received on within note the sum of two hundred dollars legal services rendered in case of The People vs. Mrs. E. J. Harding, in supreme court of Colorado, October 19, 1889.   L. R. Tucker. May 23, 1890.   Received on the within note the sum of one hundred dollars.   L. R. Tucker.  April 25, 1891.   Received on within note the sum of six hundred dollars.   L. R. Tucker."

The second:

"$1,474.                    ASHCROFT, COLO., May 24, 1882.

" Ninety days after date we promise to pay to the order of L. R. Tucker the sum of one thousand four hundred and seventy-four ($1,474) dollars, with interest at ten per cent per annum, until paid.   Value received.

" W. F. FREEMAN,
" MATTHEW ADAMS,
" JOHN CALVIN."

On which was the following indorsement: " Received on within note the sum of six hundred dollars this 24th day of May, 1890.   L. R. Tucker."

On the 25th of April, 1893, defendant filed his answer, admitting the execution of the note of February 20, 1883,

and alleging that the indorsement on the note made October 19, 1889, was incorrect, unauthorized and fictitious; that after the note had been barred by the statute of limitations an agreement was made between the parties for the settlement of the note, and that $1,300, in all, had been paid under the agreement as a payment on the first demand, and was so accepted by the plaintiff.

Admits the making of the promissory note set forth in the complaint as the second cause of action, but alleges that the indorsement of May 24, 1890, upon the note was incorrect, unauthorized and fictitious,—made for the purpose of attempting to take the note out of the statute of limitations,—and that the payment of $600, indorsed upon the note, was made as a payment on the first demand.

And, for a further defense to the second cause of action, alleged that the plaintiff, John Calvin, W. F. Freeman and the defendant, previous to the date, entered into a copartnership agreement, and that the note was given simply as a memorandum of the amount advanced by the plaintiff to the partnership; that the partnership was entered into with the distinct understanding that the note should be paid out of the first net profits of the business, if there should be such, otherwise the note was not to be paid at all; and that the partnership, subsequently, proved a failure.

The replication specifically traversed every allegation of the answer, and set up other notes made by the defendant. A demurrer was filed to the alleged new causes of action and sustained by the court.

A trial was had to a jury, resulting in a verdict for the plaintiff for $1,623.25; a motion for a new trial overruled; judgment upon the verdict and an appeal prosecuted to this court.

Mr. Robert W. Bonynge, for appellant.

Messrs. Perry & Bliss, for appellee.

REED, P. J., delivered the opinion of the court.

Counsel for appellant bases his claim for the reversal of the judgment entirely upon the refusal of the trial judge to grant a nonsuit. The determination of the correctness of the ruling involves and renders necessary an examination of all the questions presented growing out of the statute of limitations, as the defense of appellant was based entirely upon that statute.

I. Counsel takes it for granted that the bar of the statute was pleaded and issue taken upon it. I have very grave doubts in regard to the matter, and whether any question of the statute was so raised as to justify this court in entertaining the question or making any decision upon any supposed issue involving the statute.

The plea of the statute is a special, personal plea. It may be pleaded or waived at the option of the defendant. " If the defendant intends to insist upon the statute, he should plead it to prevent surprise, and if he do not do so, it is presumed he intends to waive it. Angell on Lim., 312; *Hodson v. Haridg*, 2 Wms. Saund. 636 and note; *Pearsall v. Dwight*, 2 Mass. 87.

The plea is in confession and avoidance. It admits the original indebtedness, but interposes the statute as a bar to recovery.

" Another general rule of great practical importance is that the bar of the statute must be interposed by the diligence of the debtor, and as early as possible, and usually, unless otherwise provided by statute, on the pleadings previously to the hearing, and that it will not be raised by the court unsolicited, and also that protection afforded by the statute may be waived by the debtor, *the best possible proof of such waiver being payment*." Wood on Lim., 25.

To be available, the statute must be pleaded. Such is the English rule. See *Puckel v. Moore*, Vent. 191; *Gould v. Johnson*, 2 Ld. Ray. 838; *Kirkman v. Siborn*, 4 Mu. & W. 339.

Such had been, invariably, the ruling of the United States

courts, and nearly all of the states have held, where the bar appears upon the face of the complaint, the defendant might avail himself of it by special demurrer, a general demurrer is insufficient, and even in those states, that unless the bar appears from the declaration, the statute must be pleaded. *Davenport v. Short*, 17 Minn. 24 ; *Frost v. Swest*, 2 Tex. 485 ; *Sturges v. Burton*, 8 Ohio St. 215 ; *Lewis v. Alexander*, 51 Tex. 578.

In this case it need only be said that the bar did not appear upon the complaint, as the indorsements *prima facie* made the balance a valid existing claim, recognized by the debtor, but however this may be, no demurrer was interposed, and the bar could only be made available by special plea. *Storm v. U. S.*, 94 U. S. 76 ; *Upton v. McLaughlin*, 105 U. S. 640 ; *Capen v. Woodrow*, 51 Vt. 106.

That the rule is the same under the code, see *Sands v. St. John*, 36 Barb. (N. Y.) 628 ; *Bihsin v. Bihsin*, 17 Abb. Prac. (N. Y.) 19 ; `Cotton v. Mannser*, 3 Hun (N. Y.), 552.

It is said that no rule of practice is more firmly settled than that to render the statute of limitations available as a defense it must be set up and relied on in the pleadings. *Boyce v. Christy*, 47 Mo. 70 ; *Parker v. Irvin*, 47 Ga. 405 ; *Mansfield v. Doherty*, 21 La. Ann. 395 ; *Green v. Railroad Co.*, 73 N. C. 524 ; *Merryman v. The State*, 5 Har. & J. (Md.) 425 ; *Robbins v. Harvey*, 5 Conn. 335.

The plea in this class of cases is the well known one of " *non accrevit infra sex annos*," etc.

It is called a " strict plea."

I can find nothing in the answer of a plea of the kind, or even analogous; no attempt at pleading affirmatively the bar of the statute ; no plea tendering an issue.

In regard to the first note it is said " that an agreement for the settlement of said note had been made between the parties hereto after the statute of limitations had run against the note."

In regard to the second note it is said that the indorsement was incorrect and fictitious,—" made for the purpose of attempting to take the note out of the statute."

These incidental recitals cannot take the place of a plea. The replication simply traversed the recitals in the answer. There was therefore no issue in regard to the bar of the statute of limitations.

This alone was sufficient to warrant the court in refusing a nonsuit; in fact was sufficient to warrant the court to reject and disregard all matters in pleading and evidence in regard to the statutory bar.

The court and counsel for both parties seem to have labored under the supposition that the question of the statute was involved properly, and the adjudication proceeded upon that theory. How far this assumption should control this court in reviewing the case is a puzzling question, and it may be as well to briefly review the points made as to the questions presented on the other issues.

II. In regard to the alleged settlement for the payment of $2,500, to be in full for the individual indebtedness, as alleged by the defendant and denied by the plaintiff, the evidence was very contradictory, and the jury returned a general verdict, from which it is impossible to determine the basis of its finding.

In regard to the other note, the joint note, in regard to its character, while appellant asserted that appellee was a member of the firm, was to and did advance the money for the firm use, and was to lose it if the venture was unsuccessful, both are positively denied by the plaintiff, and each testified in direct opposition to the other; consequently the contention of plaintiff was not established by the evidence. One pertinent fact should not be overlooked. Although the appellant testified that the contract made in advance of the undertaking was " Mr. Tucker was to put up the money, and if it was lost he was to lose it, and we were to lose our time and any expenses we might have been to outside," the business in Ashcroft, as shown by the dates, was commenced February, 1882; the note bore date May 24, 1882, and was made after the collapse and close of business. Appellant, on cross-examination, testified Tucker had the benefit of all the

goods that were returned upon the basis of some discount when the business was abandoned. " The $1,474 note was given to secure Mr. Tucker for the amount of money he had advanced; *it was given at the time we concluded that the town was going off on wheels and we would soon have to settle it.*"

The statement is hardly compatible with the fact that, if the money was lost it was to be the loss of appellee. If such were the fact, why should the parties have made the note for advances after the collapse, and after it had been lost?

The jury would have been justified in finding that issue against the defendant.

III. The only remaining question is whether the payments made and indorsed, under the facts proved, prevented the claims from being barred by the statute.

It is conceded that payments were made. The recognition of an existing indebtedness after the statutory bar had become operative was clear and unequivocal. That the payments were made upon such indebtedness was established by the evidence of both parties.

For the purposes of this discussion it is unimportant whether there had been, as claimed by the defendant, an agreement to take less, in discharge of the whole. There is no new consideration. The payments were upon the original consideration. The only effect such contract could have, if established, would be to fix the amount that would discharge appellant from the original indebtedness. Taking the plea as true, it admits an agreement to pay $2,500. The proof shows it to have been only half paid. Consequently, by plea and the testimony of appellant, to that extent the original debt had been taken out of the bar of the statute, and the balance unpaid was an existing debt. As before stated, we have no data upon which to predicate the basis upon which the verdict was found. The new agreement was stated to have been made in May, 1890; the payments made, $1,300. Without definite calculation, the verdict appears to be but a trifle if any more than a balance and interest.

The plea and evidence of appellant warranted a verdict

and judgment, regardless of the question made by the payments. With that plea upon file the court could not legally grant a nonsuit. It was an admission of *some* indebtedness and of a promise to pay it.

By the amount of the verdict it is evident that it resulted from the adoption of the agreement as pleaded, or some compromise. Taking the $2,500 note alone, if allowed the sum must have been doubled, including the interest, leaving the joint note entirely out of consideration.

It was originally held in the courts of Great Britain, and in early decisions of our courts, that nothing less than an *express* promise would revive a debt barred by the statute. See Angell on Lim., sec. 209; *Dickson v. Thompson,* 2 Show. 126; *Williams v. Gun,* Fortes, 117; *Bland v. Hazelrig,* 2 Vent. 152.

Afterward the decisions swung clear over to the other extreme, and it was held that the *slightest* acknowledgment would take a demand out of the statute. *Trueman v. Fenton,* Cowp. 548; *Bryan v. Horseman,* 4 East, 593; *Quantock v. England,* 5 Burr. 2628.

But for many years in England, and since the leading case of *Bell v. Morrison,* (1828) 1 Pet. (U. S.) 351, that law has been well settled and declared to be,—*first,* that a debt barred by the statute of limitations may be revived by a new promise; *second,* that such new promise may either be an *express* promise or an *implied* one; *third,* that the latter is created by a clear and unqualified acknowledgment of the debt. See Angell on Lim., sec. 231.

No rule of law is better settled than that a partial payment made on the debt for which the action is brought will be sufficient to renew the entire debt. *United States v. Wilder,* 13 Wall. 254. And is sufficient to warrant a jury in finding a promise to pay the balance. *White v. Jordan,* 27 Me. 370; *Whipple v. Stevens,* 22 N. H. 219; *Ilsley v. Jewett,* 2 Metc. (Mass.) 168; *Pond v. Williams,* 1 Gray (Mass.), 630; *Sanderson v. Milton Stage Co.,* 18 Vt. 107; *Earroll v. Forsyth,* 69 Ill.

127; *Ayer v. Hawkins*, 19 Vt. 28; *Van Keusen v. Parmelee*, 2 N. Y. 523; *Harper v. Fairley*, 53 N. Y. 442.

In *Barclay's Appeal*, 64 Pa. St. 67, the court said: "There can be no more unequivocal acknowledgment of a present existing debt than a payment on account of it." See, also, *Cleaves v. Jones*, 6 Exch. 568; *Bamfield v. Tupper*, 7 Exch. 27; *Maber v. Maber*, L. R. 2 Exch. 153; *Hart v. Nash*, 2 Cr. M. & R. 337; *Hooper v. Stevens*, 4 Ad. & El. 71.

As in this case, the giving of a note to be used and the proceeds applied in payment is equally significant and efficient. *Turney v. Dodwell*, 3 El. & Bl. 136; *Irving v. Verch*, 3 Mees. & W. 90; *Gowan v. Foster*, 3 Barn. & Ad. 507; *Smith v. Ryan*, 66 N. Y. 352.

IV. Under the evidence the indorsement of the payment of $600 upon the joint note of Freeman, Adams & Calvin was unwarranted and would not operate to relieve the bar of the statute, had it been properly pleaded. The note being joint, and there being an individual indebtedness of appellant, and no order of designation of it as a payment upon that note having been made, the payment, being a personal or individual one, must have been credited to the individual indebtedness, but under the finding of the jury in this case cannot affect the result.

It appears from the record that an appeal was prayed and allowed by both parties, and cross error filed by the appellee, but are not insisted upon, nor is the cross appeal prosecuted. Under the law of the case, if appellee is content with the judgment, it seems that appellant should be.

The judgment will be affirmed.

*Affirmed.*