## CLARA D. CARROLL *et al.*

*v.*

## HENRY H. FORSYTH.

1. LIMITATIONS—*new promise to take case out of the bar.* To remove the bar of the Statute of Limitations, it is incumbent on the plaintiff to prove an express promise to pay the money, or a conditional promise with a performance of the condition, or an unqualified admission that the debt is due and unpaid, nothing being said or done at the time rebutting the presumption of a promise to pay. It must be of such a character as to clearly show a recognition of the debt, and an intention to pay it.

2. SAME—*promise to pay by implication.* If there be no express promise, but a promise is to be raised by implication of law from the acknowledgment of the party, the acknowledgment must contain an unqualified and direct admission of a previous subsisting debt which the party is liable and willing to pay. If there be accompanying circumstances which repel the presumption of a promise or intention to pay, or if the expression be equivocal, vague and indeterminate, leading to no certain conclusion, but at best to probable inference, which may affect different minds in different ways, they can not go to the jury as evidence of a new promise, to revive the cause of action.

3. Where the promise relied on to remove the statutory bar was not made to the person claiming an indebtedness to him, but to one from whom he had borrowed money, to repay him such loan, and contained no acknowledgment of any indebtedness, and the promise was not shown

69   127
25a 555
25a 632

69   127
31a 348

69   127
32a 285

69   127
137  409
39a 644

69   127
47a  28

69   127
61a 139
61a 333

69   127
165  176
165  315
67a 314
68a 298

69   127
71a 316

69     127
96a ¹586
98a ¹613

69     127
e110a¹405

to have been made in pursuance of an agreement between the debtor and the creditor, or for the express purpose of paying what the defendant owed the plaintiff, and it could be as readily presumed that the promise was intended as a gratuity or as a loan, as that it was intended as a payment, it was held insufficient to take the case out of the statutory bar.

4. SAME—*promise to a stranger not sufficient.* An express acknowledgment of indebtedness made by a debtor to one not an agent of the creditor, and who is in no way interested in the debt, and of an intention to pay it, will not be sufficient to take the case out of the operation of the Statute of Limitations.

5. SAME—*promise inferred from payment.* Where a debtor pays a certain sum to another for his creditor, with the understanding that it shall be treated as a payment on his debt, this will be sufficient to revive the cause of action barred by the statute. In such a case it must be shown that the money was intended as a payment on the party's own indebtedness. If it be left in doubt whether such was the fact it will not be sufficient.

6. SAME—*mere giving credit of payment not sufficient.* Where one has an account against another, the whole or a part of which is barred by the Statute of Limitations, he can not take it out of the statute by merely entering a credit. The credit, to have that effect, must be authorized and proved to have been intended as a payment on the account.

APPEAL from the Circuit Court of Cook county; the Hon. LAMBERT TREE, Judge, presiding.

This was a claim filed by the appellee, against the estate of Charles Carroll, deceased, for a balance claimed to be due the appellee on account for services. The opinion of the court states the material points and facts.

Mr. OBADIAH JACKSON, for the appellants.

Mr. JULIUS STARR, and Mr. D. J. SCHUYLER, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

We propose only to consider the question whether, under the evidence, the Statute of Limitations is a defense to appellee's claim, or any portion of it. His claim is for services as

superintendent and bookkeeper, rendered the intestate, in a distillery in Peoria, from 1860, until July 1, 1864. There is no question but that more than five years had elapsed after the claim was due, before the commencement of the suit, but appellee relies upon a payment and subsequent promise within five years. The evidence relied upon to establish the subsequent promise and payment, is that of Robert M. Cox, the brother-in-law of appellee, and the following is the only portion of it which relates to these questions:

"Carroll came to me once, and asked me how much money I loaned Forsyth, and I told him $3500; and he told me not to ask Forsyth for the money, that he would pay it to me in a short time; that was in the fall of 1864; it was after the business had been wound up. I can not say when they wound their business up, but I had stopped my distillery at that time. I do not know exactly when they did stop their distillery.

At several different times after that, he had promised to pay me the money from one time to another; one time that I am positive of was in 1866, in March, I believe. I went to Carroll and told him that I needed the money, and wanted to know if he could let me have some; that was in Peoria I met him at that time, and I told him I was going away, next day, to Kewanee, and he promised me that he would raise some money and give it to Forsyth, or send it to me. In a few days after that I received $500.

I guess I have had conversations a dozen different times after that, here in Chicago as well. I came here at different times to see him, and to see if I could get the money from him.

I think the last conversation was at the Board of Trade in Chicago, and it was either in the fall of 1869 or 1870, I am not positive which, and that he told me he had a large deal in wheat and pork, and just as soon as he wound up that deal he would pay me.

9—69TH ILL.

Mr. Carroll told me that he had—just as I stated before—that he had considerable money invested in pork and wheat, and just as soon as he got that deal settled up he would settle and pay me the balance.

The only time that I remember of him promising to pay interest, was the first time he came to me and told me not to ask Forsyth for money, that he would pay me, and would pay me interest on the money; I do not think there was any rate of interest mentioned.

Q. Now then, Mr. Cox, I will ask you, sir, how Mr. Carroll came to make this promise to you; what was the basis of this promise?

A. Well, I do not know; I had nothing to do with Carroll; he came to me himself and told me that he owed Forsyth this money, and that he told him—I think it was before he went to Washington—that he had told Forsyth to pay me, I suppose, and draw the money out of the business, and when Forsyth came for the money, he told me Carroll was in Washington.

Q. What was the amount he agreed to pay?

A. $3500.

Q. That is the amount that he said he owed Forsyth at that time?

A. He didn't state to me he owed him any amount.

Q. Was it stated then, generally, that he was indebted to him generally?

A. He didn't say anything about the exact amount, but told me that he would pay me $3500 for Henry Forsyth—that was the amount Forsyth was owing me. I paid $3500 to Peter Spencks, the man I bought the house from; I bought it for Forsyth; he said he was owing him, but did not say any particular amount."

On cross-examination, he testified further as follows:

Q. " How much of this $3500 has ever been paid?

A. I suppose there is about $2000 owing to me.

Q.  Who paid this $500 that you speak of—that is, who did you get it from?

A.  It was sent to me from Peoria by Forsyth.

Q.  Then you do not know of your own knowledge who Forsyth got it from?

A.  Well, Carroll told me that he—in Chicago, after that time—he asked me if Mr. Forsyth sent me $500; I told him he did.  He told me he gave Forsyth $500 to send to me.  I think that conversation was in 1866; it might have been two or three months, or may be more, after I secured the $500.  I received the $500 along about the last of March—can not fix the exact date; it was either a check or a draft—I am not positive—it was one, I think; think it was Carroll's."

The law, as recognized by this court, is, that to remove the bar of the Statute of Limitations it is incumbent on the plaintiff to prove an express promise to pay the money, or a conditional promise with a performance of the condition, or an unqualified admission that the debt is due and unpaid, nothing being said or done at the time rebutting the presumption of a promise to pay—it must be of such a character as to clearly show a recognition of the debt, and an intention to pay it.  *Parsons* v. *Northern Illinois Coal and Iron Co.* 38 Ill. 433; *Ayers* v. *Richards,* 12 id. 148; *Norton* v. *Colby,* 52 id. 199.

It will be observed that it does not appear from this evidence what amount Carroll owed appellee, or that the undertaking to pay the witness was for the purpose of paying such indebtedness.  In *Roll* v. *Morrison,* 1 Peters, 362, Mr. Justice STORY said:  " If there be no express promise, but a promise to be raised by implication of law, from the acknowledgment of the party, such acknowledgment ought to contain an unqualified and direct admission of a previous subsisting debt, which the party is liable and willing to pay.  If there be accompanying circumstances which repel the presumption of a promise or intention to pay, if the expressions be equivocal, vague and indeterminate, leading to no certain conclu-

sion, but at best to probable inference, which may affect different minds in different ways, we think they ought not to go to the jury as evidence of a new promise to revive the cause of action." So here, the utmost that can be claimed for this evidence is, that it raises a fair presumption that payment of a debt which Carroll owed appellee was intended by his promise to the witness; but as the evidence shows that appellee had been zealous and faithful in the discharge of his duties, was poor and dissatisfied with the compensation he had received, and the promise is not shown to have been made pursuant to an agreement between him and Carroll, or for the express purpose of paying what Carroll owed him, the presumption might as readily be indulged that it was intended as a gratuity, or a loan to be repaid at appellee's convenience. The evidence is not sufficiently clear to show with any certainty with what intention the promise was made. Nor do we consider that the evidence of Baldwin tends to strengthen the evidence of Cox in this respect. In addition to the indefinite and ambiguous character of the answer then made by Carroll, Baldwin does not seem to have been acting as the agent of appellee, or in any way interested in this debt, and therefore, even if an express declaration had been made to him by Carroll, that he owed appellee $5000, and intended to pay it, it would not have been sufficient to have relieved the case from the bar created by the statute. *Keener* v. *Crull and wife*, 19 Ill. 190.

If the evidence showed that the $500 had been paid, with the understanding that it should be treated as a payment on the amount due from Carroll to appellee, it would be sufficient to revive the cause of action, but, unfortunately, the proof fails to show this. The only evidence on behalf of appellee upon the subject is, that the money was sent to Cox by appellee; that Carroll asked the witness Cox if appellee had sent him $500, and upon the witness replying in the affirmative, Carroll added that he gave appellee $500 to send to the witness. There is not one word said about Carroll's debt to

appellee, or why he gave this money to appellee. But appellants prove by William Carroll, who appears to be a disinterested witness, that the $500 was sent to appellee as a gratuity.

The mere fact that the credit is given upon appellee's claim, is, of itself, of no significance. It is not a case of mutual, current or dependent accounts, nor does the credit appear to have been given with the express or implied consent or authority of the deceased. *Kimball* v. *Kimball*, 16 Mich. 211. Where one has an account against another, the whole or the part of which is barred by the Statute of Limitations, he can not take it all out of the statute by merely entering a credit. The credit, to have that effect, must be authorized and proved to have been intended as a payment on the account. *Chambers* v. *Mark*, 1 Casey, 296.

We think, in every view of this case, the judgment of the court below was unauthorized. Even if it were conceded that the promise to Cox was sufficient to take the case out of the statute, as no specific debt from Carroll to appellee was mentioned or referred to, and there is no pretense of a promise to pay anything beyond the amount of appellee's debt to Cox, we are unable to see upon what principle the verdict below can be sustained.

The judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*