## CLARA D. McGREW *et al.* Exrs. etc.

*v.*

## HENRY H. FORSYTH.

1. LIMITATION—*new promise, to avoid bar.* The burden of proving a promise to pay a debt barred by the statute, within five years, is upon the creditor seeking to enforce his claim. Proof of a promise to pay in 1865 or 1866, the witness thinking it was probably the latter year, when if it was before August, 1866, it was not within the five years, is not sufficient proof to take the case out of the statute.

2. SAME—*promise to unauthorized person not sufficient.* A promise to pay a debt, made to a person not legally or equitably interested in the same, and who does not pretend to have had any authority from the creditor to call upon the debtor in relation to the debt, will not avoid the bar of the statute.

3. Where A was indebted to B, and B to C, and the latter being anxious to collect his debt, but, without the authority of B to negotiate or act for him, called upon A, and inquired as to his indebtedness to B, with a view thereby of getting money to enable B to pay him, and A promised C to pay the debt he owed B, it was *held,* that C was not legally or equitably interested in the debt thus promised to be paid, and, not being authorized by B to act for him, the promise made by A to C could not take the debt out of the bar of the statute.

APPEAL from the Circuit Court of Cook county; the Hon. HENRY BOOTH, Judge, presiding.

Messrs. JACKSON & SKINNER, for the appellants.

Mr. D. J. SCHUYLER, and Mr. JULIUS S. STARR, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

When this case was here before (*Carroll et al.* v. *Forsyth,* 69 Ill. 127), we held that the promises of Carroll, as testified to by the witness Cox, were too vague and uncertain to relieve appellee's claim from the bar of the Statute of Limitations, and that his evidence, in this respect, was not aided by the evidence of Baldwin, because it did not appear that Baldwin

was, at the time of the alleged conversation between him and Carroll, the agent of appellee, or in any way interested in his debt.

On the last trial in the court below, both Baldwin and Cox again testified as witnesses for appellee, but it is enough to say, in regard Baldwin's evidence then given, it is insufficient, of itself, to prove a promise to pay within five years, because he does not show that the promise of Carroll, made to him, if such it may be called, was within five years. He says it was in 1865 or 1866—he thinks, probably, in 1866, but at what time in that year he expresses no opinion. Although it may have been in 1866, still, if it was before the month of August, in that year, it was not within five years, and would not remove the bar of the statute, and the burden was upon appellee to prove a promise within the five years; nor has his evidence any tendency to support that of Cox, for it relates to a debt of $5000, and that of Cox to one of $3500.

The evidence of Cox is something more specific in the record before us, than it was as presented in the former record; but there is still an objection to it (not then noticed, because of the more obviousness of the objection pointed out), which, in our opinion, is decisive of its insufficiency. Cox does not pretend to have had any authority from appellee to call upon Carroll in regard to his debt to appellee, and he was not legally or equitably interested in it. He was simply a creditor of appellee to the amount of $3500, and he says, in the first instance, Carroll called upon him, and requested to know if appellee owed him that amount, and, upon being informed that he did, Carroll said that he owed appellee the money, and requested him not to ask appellee for it. The subsequent conversations detailed as occurring between him and Carroll, all refer to this promise to pay the debt of the witness, and in none of them is it shown it was mutually understood the witness was acting in the name or on behalf of appellee, and there is no evidence that what Carroll said to the witness was ever communicated to and approved by appellee.

When, in our former opinion, in alluding to the evidence of Baldwin, we said it did not seem he was in any way interested in the debt, we meant legally or equitably interested, so as to entitle him to demand and receive it, or to negotiate in regard to its payment; and in *Keener* v. *Crull and Wife*, 19 Ill. 189, where it was said, "Like any other promise, having legal force and sanction, it must be made to the party seeking its benefits, or to some one authorized to act for him," it was intended the party seeking its benefits was a person having a legal or equitable right to the claim, and not merely any party desiring to appropriate it to his own use.

What right has the creditor, merely as such, to collect and appropriate the debts due to his debtor? Could it be pretended that Cox, without appellee's knowledge or sanction, was authorized to collect what Carroll owed appellee, and appropriate it to the payment of appellee's debt to him? Manifestly, had Carroll made such a payment, it would have been purely voluntary, and would not have been binding upon appellee. It would not have been the paying of Carroll's debt to appellee, but the voluntary payment of so much money to Cox, because of appellee's debt to him, which appellee might or might not, at his election, subsequently ratify as a payment of Carroll's debt to him. Without proof of such subsequent ratification, which is entirely wanting here, appellee, notwithstanding the payment by Carroll to Cox, might still sue Carroll and recover his debt, assuming, of course, that his claim was otherwise free from legal objection.

But may we infer, from all the circumstances, that Cox was authorized to act in the matter as agent for appellee? Whether Cox was agent or not was susceptible of direct and positive proof. He was a witness, and competent to disclose the capacity in which he acted. The burden was on appellee to show, not only that the promise was made, but that it was made to a person authorized, in the estimation of the law, to accept it. It was to be proved by the best evidence of which the nature of the case was susceptible; and Cox having testified, is presumed to have disclosed all he knew with regard to the char-

acter in which he was acting. There is nothing left to inference. He speaks of no agency, and of no knowledge on the part of appellee, as to what occurred in the conversation between him and Carroll, and his evidence discloses simply the case of a creditor receiving the promise of a debtor to his debtor, for the payment of his debt, and his subsequent unavailing attempts to have him fulfill that promise, all in the absence, and without the knowledge or consent of his debtor.

We are of opinion that Cox was a stranger to the debt from Carroll to appellee, and, being such, Carroll's promise to Cox was not sufficient to revive Carroll's debt to appellee, as against the bar of the Statute of Limitations, on the authority of *Keener* v. *Crull and Wife, supra.*

We may say, in addition, we are by no means satisfied from the evidence that Carroll was, in fact, indebted on a sufficient legal consideration to support a promise, to appellee, in any sum, at the times of his alleged promises, made in the presence of either Baldwin or Cox. Appellee had been Carroll's bookkeeper, and the books kept by himself show that he was working for a stipulated compensation, which had been more than paid him at the conclusion of the term of his services. The indebtedness now claimed is for the same services, beyond the amount thus stipulated for and paid. His services were highly appreciated by Carroll, and he, undoubtedly, felt under moral obligation to increase the amount; and we incline to the opinion that all his promises were thus prompted, and this is supported, to some extent, by the evidence of Charles R. Carroll. The misfortune to appellee is that they were not performed in the lifetime of Carroll, since the unexecuted promise, resting only upon a moral consideration, affords no ground for the aid either of a court of law or equity.

We do not wish, however, to be understood as placing our decision on this view of the case; but we refer to it merely as divesting the application of the rigorous rule of law, in this instance, of the appearance of harshness which it might otherwise bear.

*Judgment reversed.*