## WILLIAM A. HAYWARD ET AL.

### v.

## CAROLINE GUNN.

STATUTE OF LIMITATIONS—NEW PROMISE.—A debt barred by the Statute of Limitations may be revived by a new promise, express or implied, and a promise may be implied from a clear and unequivocal acknowledgment of the debt. The acknowledgment is not to be regarded as repelling the presumption of payment, but as a new undertaking. But such acknowledgment should be an unqualified and direct admission of a previous subsisting debt, which the party is liable and willing to pay. An admission that if there is anything found to be due, he would pay, is not sufficient.

APPEAL from the Circuit Court of Richland county; the Hon. JAMES C. ALLEN, Judge, presiding. Opinion filed August 1, 1879.

Messrs. CANBY & LONGENECKER, for appellants; that the acknowledgment proved, is not sufficient to take the case out of the statute, cited Parson v. Coal Co. 38 Ill. 430; Keener v. Crull, 19 Ill. 189; Horner v. Starkey, 27 Ill. 13; Dickerson v. Sutton, 40 Ill. 403; Mullett v. Shrump, 27 Ill. 110; McGrew v. Forsyth, 80 Ill. 596.

Messrs. WILSON & HUTCHINSON, for appellee; that the acknowledgment was sufficient, cited Angell on Limitations, § 227; Mellick v. Seelhorst, Breese, 221.

WALL, J. This suit was brought to recover a sum of money alleged to have been received by Horace Hayward, an attorney, and not accounted for by him, upon certain notes placed in his hands for collection by the appellee. The Statute of Limitations—five years—is pleaded, and a new promise within five years is replied. It is upon the evidence in support of this replication, so far as shown by the record, that the case must be settled. Ed. S. Wilson testified as follows : " Don't know that I can state the exact conversation had with Hayward; was employed by Mrs. Gunn to see Hayward about the three notes,

of $500 each, she had given him. In first conversation, Hayward said he thought he had paid them. I had some delicacy about approaching Hayward on the matter, but went to him. He said, 'It is all satisfactorily arranged.' I wanted to see his books; he would not show them; went to the records, and found that C. S. & Co. had foreclosed a mortgage on S. Gunn's property. Found agreement to pay $1,000, and settle all costs. I told Hayward what I found, and that he must settle this matter. He said he thought he could make some showing. He said he would look the matter up. He said the fees had about eaten it up; 'You need not sue; I will settle if there is anything due her.' Mrs. Gunn saw me again, six months after. I then sued Hayward. This conversation took place with Hayward in the spring of 1872 or 1873. In this conversation with him I claimed that Hayward owed Mrs. Gunn $500, less the master in chancery fees, $62.93. He never told me that there were other costs, and did not say there were other fees. Hayward said he would settle, and pay what was due. There was nothing said about Statute of Limitations until after I had sued him. In the conversation about a settlement Hayward said he would look the matter up, and pay whatever is due. He said he would look it up in a few days. I recollect that distinctly, but do not recollect whether I swore to this before or not. Statute of Limitations was in the pleadings then, but I did not deem this evidence necessary. Hayward was a witness then." Mr. Mundy testified as follows: "Went to see Hayward at request of Mrs. Gunn. Hayward said that she had deposited three notes with him, of $500 each. He said that $1,000 went to pay costs, and the rest to pay claim; $1,000 went to pay Eastern claim. He said he would hunt the matter up. I went again to see him. He said he could find nothing, but presumed it was satisfactorily settled. I am Mrs. Gunn's brother. Conversation was in February, '73 or '74. Hayward said the two first notes paid costs and all." It was shown that out of the proceeds of the notes $1,000 was to be paid to certain parties in New York, clear of all expenses, which were to be paid out of this fund. The verdict was for the plaintiff in the Circuit Court, and the case is brought here by appeal.

Hayward v. Gunn.

A debt barred by the Statute of Limitations may be revived by a new promise, either express or implied. A promise may be implied from a clear and unqualified acknowledgment of the debt. Angell on Lim. Chap. 20, Sec. 25. A new contract thus springs out of, and is supported by the original consideration. The acknowledgment is not to be regarded as repelling the presumption of payment, but as a new undertaking. In the leading case of Bell v. Morrison, 1 Peters, 362, Mr. Justice Story, in delivering the opinion of the court, said: " If there be no express promise, but a promise is to be raised by implication of law from an acknowledgment of the party, such acknowledgment ought to contain an unqualified and direct admission of a previous subsisting debt, which the party is liable and willing to pay. If there be accompanying circumstances which repel the presumption of a promise or intention to pay; if the expressions be equivocal, vague and indeterminate, leading to no certain conclusions, but at best to probable inferences, which may affect different minds in different ways, we think they ought not to go to a jury as evidence of a new promise to revive the cause of action."

In Keener v. Crull, 19 Ill. 191, it was said: "The new promise may arise out of such facts as identify the debt, the subject of the promise, with such certainty as will clearly determine its character, fix the amount due, and show a present unqualified willingness and intention to pay it, at the time acted upon and acceded to by the creditor." citing Bell v. Morrison, *supra*, and numerous other authorities in support of this view, and this ruling has been followed in subsequent cases in this State. Carroll v. Forsyth, 69 Ill. 127; McGrew v. Forsyth, 80 Ill. 596. Upon carefully considering the evidence, we think it fails to establish a new promise, according to the rule as above stated. There was no unqualified admission of a subsisting obligation; no amount due was fixed; no data admitted from which the amount could be ascertained; nor is there shown to be any intention to pay any certain amount. There was but a vague, equivocal expression, which might affect different minds in different ways, producing one impression upon one and a different impression upon another; probably a very

uncertain impression upon one having no interest in the subject matter. The most that can be said of it is, that he admitted he had made the collection, but that he had probably disbursed the money, or the greater part of it; that he was in doubt whether there was anything due, but he would examine his accounts, and if he found he owed anything he would pay. This certainly was not, and was not intended to be, an admission of the claim made by Mr. Wilson that he owed $500.00, less $62.93, the Master's fees. When confronted with this demand he did not confess it. He rather evaded it. He would look into it. By his conduct he clearly said if there was anything due which he did not acknowledge, it was less than the sum fixed by Wilson. In fact, he did not admit that there was any sum remaining in his hands for which he was accountable, much less the amount claimed, and as we view the law, there is no sufficient proof upon which to base a new promise. It is the duty of the courts to fairly administer and enforce the Statute of Limitations, according to its true spirit and purpose. It has been said by an eminent law writer and jurist, "that it is a wise and beneficial law, designed not merely to raise a presumption of payment of a just debt from lapse of time, but to afford security against stale demands after the true state of the transaction may have been forgotten, or be incapable of explanation by reason of death or the removal of witnesses. It has a manifest tendency to produce speedy settlement of accounts, and suppress those prejudices which may arise at a distance of time, and baffle every effort to counteract or overcome them. An honest debt may sometimes be lost, but many unfounded recoveries will be prevented by a fair construction and a just application of this statute; but the creditor can have no cause of complaint, since it is by his own neglect that the bar may be interposed." The judgment is reversed and the cause remanded.

Reversed and remanded.