GREEN C. PATTERSON, ADMINISTRATOR,

v.

NANCY COLLAR.

*Administration—Claim for Services—Family Relation—Special Findings—Limitations—Master and Servant.*

1. In the absence of a contract, the rendition of services by those sustaining near family relations, raises no presumption of an intention to charge or pay therefor.

2. A claim filed by a niece against the estate of an uncle for services rendered in his lifetime, and for a sum alleged to have been acknowledged by him to be due the claimant, can not be maintained in the absence of a contract, express or implied.

3. Admissions to strangers are inadmissible to overcome the bar of the statute of limitations.

[Opinion filed March 14, 1889.]

Appeal from the Circuit Court of St. Clair County; the Hon. William H. Snyder, Judge, presiding.

Mr. J. M. Hamill, for appellant.

The law is well settled, that where a child remains with the parent or with a person standing in the relation of parent, after arriving at majority, and remains in the same apparent relation as when a minor, the presumption is that the parties do not contemplate payment of wages for services. Unless it be shown that there is an express contract to pay for such services, a recovery therefor can not be had. The law, in such case, will not imply a contract on the part of the parent to pay for services performed, nor oblige the child to pay for support, but will presume that neither contemplate recompense, other than such as naturally arises out of that domestic relation.  Miller v. Miller, 16 Ill. 296; Brush v. Blanchard, 18 Ill. 46; Meyers v. Malcolm, 20 Ill. 621; Bond v. Lockwood, 33 Ill. 212; Maloney v. Scanlan, 53 Ill. 122; Mowbry v. Mowbry, 64 Ill. 383; Meyer v. Temme, Guardian, 72 Ill. 574; Guffin v. First Nat. Bank of Morrison, 74 Ill. 259; Faloon v. McIntyre, 118 Ill. 292; Arnold et al. v. Franklin, 3 Ill. App. 141; Cooper v. Cooper, 3 Ill. App. 492.

This is true where services are voluntarily rendered or support furnished by those sustaining near family relations, whether related by blood or not.

The evidence must be clear, direct and positive that the relation between the parties was not the ordinary one of parent and child, or of brother and sister, but that of debtor and creditor, or of master and servant. To establish this new relation it is obvious that some arrangement or contract to

that effect must be shown. No man is to be made debtor without his knowledge or assent, or under circumstances where he has no reason to expect that such is his position or liability.

It must have been the purpose of the deceased to assume a legal obligation, capable of being enforced against him. The ordinary expressions of gratitude for kindness to old age, weakness and suffering are not to be tortured into contract obligations. Hall v. Finch, 29 Wis. 278; Mountain v. Fisher, 22 Wis. 93; Swires v. Parsons, 5 Watts & S. 357; Bash v. Bash, 9 Pa. St. 260; Lynn v. Lynn, 29 Pa. St. 369; Duffey et al. v. Duffey, 44 Pa. St. 402; Lantz v. Frey and wife, 14 Pa. St. 201; Defrance v. Austin, 9 Pa. St. 309; Scully v. Scully's Executor, 28 Iowa, 548; Coe v. Wager, 42 Mich. 49; St. Jude's Church v. Van Denbery, 31 Mich. 287; Fitch v. Peckham, Executrix, 16 Vt. 150; Weir v. Weir's Adm'r, 3 B. Mon. 645; Williams v. Hutchinson, 3 N. Y. 312. See authorities cited in note to same case in 39 American Decisions, 306.

Where two parties understand they are mutually receiving and rendering favors, with no present design to make them pecuniary charge against each other, it is an unimportant inquiry what is their relative value. And where an individual goes to live in a family with the understanding that he is simply to go and come as he pleases, and be treated and entertained as a member of the family, there is no presumption that he intends to charge for what he does, nor that he is to be charged for what he receives. If he designs to change this relation he must fully notify the opposite party. Dunlap v. Allen, 90 Ill. 108.

For the purpose for which it was introduced the evidence in question was absolutely worthless, for it neither shows the admission of a debt nor a promise to pay it. Besides, Aultman was not acting as the agent of appellee, and a promise made to a stranger has no effect upon a debt barred by the statute. In order to give the promise legal force and effect it must be made to the party to be benefited, or some one authorized to act in his behalf. Wachter v. Albee, Adm'x,

Patterson v. Collar.

80 Ill. 47; Keener v. Crull and wife, 19 Ill. 189; Carroll et al. v. Forsyth, 69 Ill. 127; Norton v. Colby, 52 Ill. 198; McGrew et al., Ex'rs, v. Forsyth, 80 Ill. 596; Teesen v. Camblin, 1 Ill. App. 424; Katz v. Moessinger, 7 Ill. App. 536; Dawdy v. Nelson, 12 Ill. App. 74.

Where the statute of limitations has run and become a bar to an action for the recovery of a debt, a subsequent admission by the party owing the debt that the account was correct, or that he had received the goods, money or services, or had executed the note sued on, is not sufficient to obviate the bar. Nothing short of an express promise to pay the money, or an unqualified admission that the debt is due and unpaid, nothing being said or done at the time rebutting the presumption of a promise to pay, will remove the bar of the statute. Wachter v. Albee, 80 Ill. 47; Parsons v. N. Ill. Coal & Iron Co., 38 Ill. 430; Kallenbach v. Dickinson, 100 Ill. 427; Thompson v. Reed, 48 Ill. 118; Keener v. Crull, 19 Ill. 189; Ayers v. Richards, 12 Ill. 146; Cagwin v. Ball & Co., 2 Ill. App. 70; Hayward et al. v. Gunn, 4 Ill. App. 161; Bloomfield v. Bloomfield, 7 Ill. App. 261; Jared v. Vanvleet & Johnson, 13 Ill. App. 517.

Messrs. DILL & SCHAEFER, for appellee.

At the request of appellant's attorney, the jury found specially two facts: 1st. That appellee, while she lived in his family, was treated by Mr. McClintock as a member thereof. 2d. That appellee lived there as a member of the family.

These propositions were never disputed by us. But they do not reach the question at issue. If the attorney had put a third inquiry in these words: "Was Nancy Stout, now Nancy Collar, to be compensated for her services?" The jury would have returned an emphatic "*Yes.*" By their general verdict the jury answered this question; they said yes, she was to be paid $5,000; this amount being fixed by Mr. McClintock himself as a fair compensation for her services.

In Miller v. Miller, 16 Ill. 298, the law applicable to this case is clearly stated. The court says: "Where one remains

with a parent, or with a person standing in the relation of a parent, after arriving at majority, and remains in the same apparent relation as when a minor, the presumption is that the parties do not contemplate the payment of wages for services.

"This presumption may be overthrown, and the reverse established, by proof of an express or implied contract, and the implied contract may be proven by facts and circumstances which show that both parties, at the time services were performed, contemplated or intended pecuniary recompense other than such as naturally arises out of the relation of parent and child."

In the absence of express proof a contract may be implied from circumstances. Schwarz v. Schwarz, 26 Ill. 81.

In the Schwarz case, page 83, the court says: "Intents must be inferred from facts and circumstances. The real object and design of the parties quite often can be reached in no other way. Sometimes very slight circumstances will produce the desired effect in the minds of the jury; at another time they must be of a stronger character to induce the mind to yield the required assent."

Viewed purely in the light of circumstances, is it reasonable to suppose appellee intended to give to her childless uncle and aunt the services of sixteen of the best years of her life without compensation?

On the other hand, is it reasonable to suppose that Mr. McClintock desired these services as a gratuity? Why should he? He had no children to inherit his property. Appellee was his favorite, and was always a daughter to him. He certainly intended she should be paid, well paid, for her services. But fortunately we have no occasion to resort to speculation or conjecture in order to determine what his intentions were. The testimony of Kase, Rich, Aultman and Jessie Collar settles this question beyond dispute or cavil. He intended she should be paid $5,000, in addition to what she had already received from him.

In Warren v. Warren, 105 Ill. 568, the court says: "Where an adult daughter renders services to her father, at his

request, in the absence of proof that the services were performed as a gratuity, the law will create a liability on his part to pay for them, though no price has been agreed upon as a compensation."

When an indebtedness is admitted, the fixing the amount of the indebtedness becomes a mere matter of evidence, and it is competent to show the admissions of the party as to the amount of the indebtedness. The testimony of Kase and Rich was therefore clearly proper, and taken in connection with the testimony of Aultman and Jessie Collar, the new promise is fully established.

In Wooters v. King, 54 Ill. 344, the court says: "Any language (made to appellee) clearly admitting the debt to be due and unpaid, and showing an intention to pay it, would take the case out of the statute. Such language would be considered an implied promise." This principle is re-asserted in Carroll's case, 69 Ill. 127; in Wachter's case, 80 Ill. 47, and in Kallenbach's case, 100 Ill. 427.

PHILLIPS, J. Appellee filed her claim against the estate of William McClintock in the County Court of St. Clair County, on May 3, 1886, claiming for sixteen years' service, at $240 per annum. On April 30, 1887, an amended claim was filed for sixteen years' service, at $312.50 per annum, and for a sum acknowledged to be due to Nancy Collar by William McClintock in his lifetime, in a certain will executed by him, of $5,000.

On a trial before a jury, in the County Court of St. Clair County, a verdict was rendered for $2,250, on which judgment was entered.

An appeal was taken to the Circuit Court of St. Clair County by the appellant, and a trial had in that court, before a jury, when a verdict was rendered for $5,000, together with two special findings.

A motion for a new trial by appellant was overruled, and a judgment entered on the general verdict for the claimant. By appeal the record is brought to this court.

The facts as shown by that record are, that about 1846

Nancy Stout, then between fifteen and sixteen years of age, having recently lost her father by death, made her home at the house of William McClintock, whose wife was her aunt, sister to her mother. Nancy Stout continued to reside with the family of William McClintock about sixteen years, until her marriage. During the time of her residence there Mrs. McClintock, her aunt, was in feeble health, and the management of the household was largely under her control, and most of the housework was done by her, although during a portion of the time a servant was hired. The evidence shows that during this whole time Nancy Stout, since Nancy Collar, the appellee, was treated as a member of the McClintock family, and quite the same as if she was a daughter. She made visits at her pleasure, using the horse and buggy of the family, was well dressed, had pin money, and went into general society in the neighborhood. Her clothing was furnished, or the money to buy it, by McClintock, who, with his wife, was childless. That appellee was treated as a daughter by the McClintocks, was admitted by her counsel on the trial. On the other hand, the evidence also discloses that she well returned the kindness shown her, in her care and attention to the comfort of her aunt and uncle. In 1876 Mrs. McClintock died and appellee was presented by William McClintock with $200 or $225, which had belonged to his wife. About that time, also, appellee, for a year or two, together with her husband, occupied a farm belonging to McClintock, for which no rent was ever paid or demanded of her or her husband. In 1875 a conveyance of premises, estimated of the value of $1,000 to $1,800, was made for a consideration of $1 and natural love and affection by McClintock to appellee, and to the issue of her body then born and to be born, in equal parts.

The special findings by the jury were, 1, that Nancy Stout, now Nancy Collar, was treated by William McClintock as a member of his family, while she lived there; and 2, that Nancy Stout, now Nancy Collar, did live in the family of William McClintock, as a member of his family, during the whole time she lived at his house. These findings in the

Patterson v. Collar.

special verdicts of the jury were clearly warranted by the evidence; and there is no evidence in this record whatever of a relation of master and servant existing between the parties by express contract, at the time or before the services were rendered.

William McClintock died February 28, 1886, and appellant was appointed administrator of the estate.

This claim for the recovery of the value of appellee's services must rest on a contract, either express or implied. The rule is well established, that where voluntary services are rendered by those sustaining near family relations, as where a child remains with a parent after arriving at majority, the presumption is that the parties do not contemplate payment or receipt of wages. Meyer v. Temme, 72 Ill. 574; Mowbry et al. v. Mowbry et al., 64 Ill. 383; Maloney et al. v. Scanlon, 53 Ill. 122; Broughton v. Stuart, 59 Ill. 440; Byers v. Thompson, 66 Ill. 421; Dun'ap v. Allen, 90 Ill. 108; Cooper v. Cooper, 12 Ill. App. 478; Miller v. Miller, 16 Ill. 296.

This rule has also been held to apply to a claim made by a son-in-law for the support of the wife's parents; and it was further held, that an express contract must be shown in such a case, before a recovery could be had. Faloon v. McIntyre et al., 118 Ill. 292; to the same effect is Woolsey v. White, 7 Ill. App. 277; also Fruitt, Adm'r, v. Anderson, 12 Ill. App. 421.

In the findings by the jury, in their special verdicts, the relation existing between the parties was found; and we hold that the rule must be held to apply to cases where a person becomes and is treated as a member of a family, during a long term of years, in the entire absence of evidence showing the existence of the relation of master and servant. This view is supported by Woolsey v. White, and Fruitt, Adm'r, v. Anderson, and by Long v. Long, *supra*.

In the case before us there can be no presumption, from the evidence, that the parties contemplated the payment or receipt of wages; that is, no contract can be implied. And since, under the more recent authorities in this State, the law

implies no contract from facts like these, to recover, the evidence must show an express contract. Faloon v. McIntyre and Long v. Long, *supra*. .

The statute of limitations was pleaded by appellant, and to remove the bar of that statute the appellee called as a witness Spencer Kase, who testified that McClintock called upon him to write a will, and, among other instructions given, was this: "I want to give Nancy Collar $5,000, in lieu of any claim of whatever kind on our family, for her kindness to our family." This is stated to have occurred in 1881 or 1883, but must have been earlier, since the witness said that he and John Hinchcliffe witnessed the will, while the evidence shows that Hinchcliffe died February, 1878. James P. Rich testified that McClintock, in two conversations with himself, one in 1882 and another in 1884, speaking of a proposed disposition of his property, said "he intended Mrs. Collar should have $5,000." At one time he brought a paper and made inquiries for a vault in which to deposit it. Jefferson Aultman testifies that McClintock said to him: "Mrs. Collar had always waited upon him a good deal, and he intended to see that she was well paid."

To all the testimony of these three witnesses appellant objected at the time; the objections being overruled, error is assigned on account of such rulings.

On the other hand, counsel for appellee insists the evidence to be admissible, as in the nature of admissions by McClintock of a sum due and owing; and on the authority of Freeman v. Freeman, 65 Ill. 106, and Maloney et al. v. Scanlon, 53 Ill. 122, we hold the testimony of Kase and Rich admissible. But we do not find the testimony of Aultman to be admissible for any purpose. We, however, hold none of this evidence sufficient to remove the bar of the statute, the statements being made in each instance to a stranger. Wachter v. Albee, Adm'r, 80 Ill. 47; McGrew et al., Executors, v. Forsyth, 80 Ill. 596; Carroll et al. v. Forsyth, 69 Ill. 127.

Jessie Collar, a daughter of appellee, testifies that, about two weeks before his death, William McClintock was at her mother's house and said to appellee: "Well, I wish I could

Patterson v. Collar.

do now as I could a few years ago." And mother says, " Why ?" " Well," he says, " I would make you a deed to more land than I have given you; but," says he, "you are well provided for anyhow. You will have plenty to keep you in your old days; I have provided well for you." He did not say how much or anything of the kind. He says, "you are the only one that has ever done anything for me." And he says, "Aunt always intended that you should have the property that her money bought, or the money." Counsel for appellee then asked: "Did he say anything about compensating her for the work she had done?"

To this question counsel for appellant objected and the objection was overruled, which ruling is assigned as error; but we see no objection except to the form of the question, which was n)t made a ground of objection. The witness then answere.l: "He said he thought, as he never had given her to amount to anything, he ought to pay her for it, for what work she had done, staying there so long."

No proof, however, having been shown of any express contract made at the time of, or prior to the rendition of the service, the testimony of the last witness must also be held insufficient to establish any such contract originally, if such a contract had ever been made; for it can not be held to be an admission of a prior contract existing, and if admitted as evidence of a new promise, still it would fail to create or prove an express contract, wherefore as a new promise it would be without consideration and not binding.

But, can it be said that from the entire evidence of the witness, Jessie Collar, a new promise is shown? Here was McClintock expressing a regret at his inability to do as much as he once had been able to do, at the same time declaring, however, that he had provided well for Mrs. Collar; that his wife had always intended the property her own money bought, or the money itself should go to her niece; he thought he never had given her anything to amount to anything, while he thought he ought to pay her for the work she had done, staying there so long. There is nothing in any of that conversation which can be understood as referring to a pre-

viously existing contract, by which an indebtedness could be held to exist, and a new promise to pay it.    On the contrary this whole testimony only enforces the conclusion that this is a case where a childless old man, appreciating former kindness from one who, by long residence and association, had come to occupy the place of a daughter, in assurance of that appreciation, and in recognition of it, declared that he had, as he thought, provided well for her support in her old age, and thereby endeavored to requite her for her kindness.    We hold, then, that there is not sufficient evidence in the record to remove the bar of the statute.    And to hold that expressions of kindness, like those testified to here, either create a liability or revive one not otherwise proven, would engender in the minds of parents and children such distrust and suspicion as would practically destroy the confidence and affection which ought to exist in that relation.    The judgment, therefore, is reversed and the cause remanded.

*Reversed and remanded.*