59   440
31a 347

## WILLIAM BROUGHTON

### *v.*

## ELECTA SMART.

1. CONFLICT OF TESTIMONY—*want of preponderance.* A party holding the affirmative of a proposition is required to maintain it by a preponderance of evidence, which can never be the case when one of two parties, both equally credible, makes an assertion which is denied by the other. The plaintiff's case, under such circumstances, is not proved.

2. ACTION *for services, when no charge was intended to be made.* In an action to recover for work and labor, it appeared the plaintiff was the sister-in-law of the defendant, and made her home at his house, and it was

*held*, that, if she did not intend to charge for what services she rendered in the family, but regarded the same as a donation, or an equivalent for living at defendant's house, she could not recover therefor.

3. REMEDY—*where one purchases land and another takes the title*. If a person purchases land and another takes the title in his own name, the real owner, it may be, may have a claim in equity to recover the land, but the nature of the claim in that regard can not be investigated in an action of assumpsit.

4. NEW TRIAL—*verdict against the evidence*. In this case, in which one of the issues presented the question whether the defendant promised to marry the plaintiff, it was held a verdict for the plaintiff was not supported by the evidence.

APPEAL from the Circuit Court of Livingston county ; the Hon. CHARLES H. WOOD, Judge, presiding.

This was an action of assumpsit, in which the declaration, among other alleged causes of action, contained a count for work and labor.   The basis for this count was certain services performed by the plaintiff in the family of the defendant while she was making her home at his house.   On this branch of the case, the court below refused the following instruction asked by the defendant :

" 3d.   If the jury believe, from the evidence, that the plaintiff made her home at the defendant's during the time that she claims pay, for services, from the defendant, and that what services she rendered during such time, she did not intend to charge the defendant for, but regarded the same a donation, or as an equivalent for living at defendant's house, then the plaintiff can not recover for such services in this suit. "

This ruling of the court is assigned as error.

The other features of the case are sufficiently presented in the opinion.

Mr. L. E. PAYSON and Mr. C. J. BEATTIE, for the appellant.

Messrs. PILLSBURY & LAWRENCE, and Mr. L. G. PEARRE, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit. The declaration counts upon a promise by the defendant to marry the plaintiff on request; on a promise to marry plaintiff in a reasonable time; on a promise to marry her in the fall of 1869; and a count for use and occupation, goods, wares and merchandise, the money counts, and account stated.

On leave to amend the declaration, the plaintiff added a count alleging seduction and abandonment by the defendant.

To the first four counts the general issue was pleaded, and issue joined, and a plea of set off to the common counts; and to the additional count, not guilty was pleaded and issue. Thus the strange anomaly is presented in an action of assumpsit, of an issue made up on a plea of not guilty. There is, however, no point made on this.

The jury found for the plaintiff and assessed her damages at $10,000. A motion for a new trial was entered; thereupon the plaintiff entered a *remittitur* of $5000, and the court overruled the motion for a new trial, and rendered judgment on the verdict.

To reverse that judgment, the defendant appeals.

We have examined the record with great care, and have reached the conclusion that the verdict was not warranted by the evidence, nor can it be regarded as the unimpassioned expression of deliberate judgment.

There is no sufficient proof of any promise to marry. The plaintiff testifies there was, while the defendant, in the most positive manner, under oath, asserts the contrary.

A party, holding the affirmative of a proposition, is required to maintain it by a preponderance of evidence, which can never be the case when one of two parties, both equally credible, makes an assertion which is denied by the other. The plaintiff's case, under such circumstances, is not proved.

But it is urged that the plaintiff's testimony is corroborated by her nephew, E. M. Smart, whose rambling and confused

statements scarcely rise to the dignity of testimony. Nor does that of William Clapp, who was called to prove admissions by the defendant, go to show a promise of marriage.

The defendant is sustained, in some degree, by the testimony of his half brother, Samuel Broughton, who states that, in the fall of 1869, the plaintiff told him, in a conversation he then had with her, that she was not engaged to be married to the defendant; that defendant had never asked her to have him. She further said she knew he did not intend to marry her. In the same conversation, she said, in a joking manner, she was going to set her cap for a man named Barunters. This talk was after plaintiff left defendant's house.

Margaret Beattie testifies that plaintiff was living at her house in 1869, in Round Grove, and she had a conversation with her, in which plaintiff said defendant had never asked her to marry him, but she depended upon what Sarah had said. This was in the fall of 1869.

The plaintiff does not explicitly deny this conversation with Samuel Broughton, but says she don't think that conversation ever occurred. Now, such a conversation was had, or it was not had. Samuel Broughton testifies in the most positive manner it did occur; and if it did not, plaintiff could, as positively, have so stated. Mrs. Beattie's testimony is not questioned.

As to the testimony of this witness, and as explanatory, it is necessary to state that plaintiff was the sister of the defendant's deceased wife, Sarah, who, on her death bed, had desired plaintiff to remain with her family and take care of the children. Sarah also said she had talked to William about it, and that Broughton had promised to treat her well, and that after her death he would give plaintiff all the rights that belonged to her, Sarah. Plaintiff also states that she could not say that defendant had any knowledge of that conversation at the time. We infer from this, that it was on the faith of a promise made by the deceased wife of defendant, that plaintiff based her

claim that defendant should marry her, and on the strength of which she demanded compliance on his part.

It may be, as William Clapp testified, that he might have married her, if she had not been in such a hurry; he did not talk about a promise to marry, he only talked of what might have been.

We fail to perceive, in the whole record, any sufficient evidence of a promise to marry made by the defendant to the plaintiff.

In a contract so important as that of marriage, there should be sufficient evidence to establish the fact. The bare, unsupported testimony of an artful, designing woman, should not, for the safety of society, be permitted to prevail against the positive denial of the party sought to be charged. If great caution is not observed by juries in such cases, the property of no unmarried man in the community is secure to him who should have the misfortune to seek the company of females, some one of whom, by her own unaided testimony, may make him her victim.

Doubtless, the jury in this case more easily reached their conclusion, from the fact, to which the plaintiff willingly testified, that, from the time she had reached the twenty-eighth year of her age, a matured woman, living in her sister's family, she had, not unwillingly, received the unlawful embraces of the defendant for more than ten years up to 1869, the year of her sister's death. She states, herself, defendant had frequent intercourse with her, " time and again," for ten years before her sister's death. After her death, on defendant's persuasion, she would leave her bed and go to the defendant's. She says he forced her, by force of argument, which she explains by saying defendant declared he would kill himself if she did not consent, and when he was dead she was to take his body to New York and bury it by the side of his mother's. This is too absurd and farcical to engage the sober attention of any court or jury.

The claim of seduction and breach of marriage promise is clearly an after-thought. The action was not brought originally on any such theory, but is the subject of an additional count, to which the plea of not guilty was interposed.

There does not appear to us any ground whatever for the pretence that the seduction was the consequence of a promise to marry. If there was any seduction, it must be remembered the plaintiff was, at its first inception, a full grown, mature woman, at least twenty-eight years of age, and knew full well the character of the acts to which she submitted, and her guilty paramour was the husband of her sister, and incapable of making a promise to marry another. From all that appears, she was a willing victim to the defendant's lust, and to the gratification of her own. She says herself that, during this illicit intercourse of ten years prior to the death of her sister, one word from her would have stopped it all at any moment. That word she would not and did not utter.

We can perceive no merits in the plaintiff's claim. She never engaged in the service of the defendant, but lived with him as one of the family, never expecting to charge him for such trifling services as she may have rendered. On this point the defendant's third instruction should have been given, and it was error to refuse it.

It may be, in equity, plaintiff may have a claim to recover the land which she alleges she purchased, a deed for one half of which the defendant took in his own name; but in this action, the nature of her claim in this regard can not be investigated, and we express no opinion about it one way or the other.

On this record we are satisfied the plaintiff ought not to recover.

The judgment of the court below is reversed and the cause remanded for a new trial.

*Judgment reversed.*