## Village of Genoa v. Jennie Riddle.

### Gen. No. 4,783.

1. JUROR—*what proof of misconduct of, essential to set aside verdict.* A verdict will not be set aside upon a mere suspicion that a juror has been guilty of misconduct; the evidence of his misconduct must be clear and convincing.

2. VERDICT—*when not disturbed as excessive.* A verdict will not be disturbed as excessive where the evidence is conflicting and where the amount awarded is not clearly too large.

Action in case for personal injuries. Appeal from the Circuit Court of DeKalb county; the Hon. LINUS C. RUTH, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed March 13, 1907.

CARNES, DUNTON & FAISSLER and G. E. STOTT, for appellant.

GEORGE BROWN and H. S. EARLY, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

This was an action on the case brought in the Circuit Court of DeKalb county, by appellee, Jennie Riddle, against appellant, the village of Genoa, a municipal corporation, to recover for personal injuries alleged to have been sustained by appellee stepping or falling into an opening in a sidewalk of one of the public streets of appellant.

The declaration charged that appellant was pos-

sessed of and had control over a certain public sidewalk on a certain public street in said village; its duty to keep the same in safe repair and condition for the use of pedestrians; and that it wrongfully and negligently suffered the same to be and remain in a dangerous and unsafe condition; and averred that appellee, while walking upon this sidewalk, and in the exercise of due care for her own safety, was seriously injured by falling or stepping into an opening in the same. Appellant pleaded not guilty. A trial was had before a jury resulting in a special finding and a verdict of guilty, and assessing appellee's damages at $1,550. A motion for a new trial was overruled, judgment entered on the verdict for $1,550 and costs, and this is an appeal to review the judgment.

The evidence shows that a street, called Main street, runs through the village in an easterly and westerly direction, and from this another runs north, called Monroe street. These streets form, respectively, the southern and eastern boundaries of block 1 of Nichols' addition to Genoa. About two hundred and fifty feet west of Monroe street is a street parallel with it, called Washington street. Previous to August, 1904, there were frame store buildings on lots 3 and 4 of block 1 of Nichols' addition; and the one on lot 4 was owned and occupied as a store by Fred Wells. During the month of August, the owners, desiring to erect new buildings, moved the old ones into the street. The building on lot 4 was moved into Main street, where it was standing on the north side of the street three feet south of the sidewalk at the time of the accident. There was a cement sidewalk nine feet wide in front of lot 4. Before the removal of the Wells building, there was a cellar way into the basement partly constructed into the sidewalk, with a railing on the east and west sides. During the moving operations, this railing and the steps leading down to the cellar were taken away, so that after the building was moved there was an opening left in the sidewalk, four feet

long, about three feet wide and about five feet deep. This was about forty feet west of the intersection of Monroe and Main streets, where there was an electric arc light of 1,200 candle power. There was another light of the same power at the intersection of Washington and Main streets. Both these lights were lighted on the evening of September 13, 1904, the date of the accident. Previous to the time of the accident the opening in the sidewalk was sometimes covered and sometimes left open. John Hadsell, the contractor on the new building, attended to the covering of the hole, and at six o'clock on the evening of the accident placed over it a railroad tie about ten inches wide, a maple shoe used by building movers, eight inches wide, and a plank twelve inches wide; and the evidence tends to show that it was so covered as late as nine o'clock, after which, by some means unknown, the covering, or a part thereof, was removed. Between nine and ten o'clock of the same evening, appellee, while on her way home from a lodge meeting, it being dark, fell into the opening and was injured.

It is first contended that the trial court erred in not granting the motion for a new trial on the ground of the alleged misconduct of one of the jurors, in support of which several affidavits were read. Only two, however, bore on the question raised; that of Clark Strong, alleging that John Ollman, one of the jurors empanelled to try the case, stated before any evidence was heard that he had his mind made up how he would vote, and that he was prejudiced against corporations; and the affidavit of the implicated juror which denied in the most emphatic manner the statements attributed to him. From all that appears, the affiants were equally credible. "A party holding the affirmative of a proposition is required to maintain it by a preponderance of the evidence, which can never be the case where one of the two parties, both equally credible, makes an assertion which is denied by the other.

The party having the affirmative under such circumstances fails." Broughton v. Smart, 59 Ill. 440. Verdicts should not be set aside on mere suspicion that a juror has acted improperly. Roe v. Taylor, 45 Ill. 485. We hold, from a consideration of the affidavits, that it is not sufficiently proved that the juror whose conduct is now called in question made the statements attributed to him. To adopt appellant's contention, and set aside this verdict on what is little more than a suspicion of the juror's misconduct, would subject almost any verdict to a similar attack. While parties are entitled to, and should have, unprejudiced jurors, yet verdicts should not be vacated on a charge of the misconduct of a juror, except on well-defined proof of the misconduct.

Appellant contends that, the opening being covered at nine o'clock on the evening of the accident, though the covering was partly removed when the accident happened less than an hour afterward, it cannot be charged with constructive notice of its removal. That might be true if it had been properly covered. On the trial, at the request of appellant, the court submitted to the jury this interrogatory: "Was the opening in the sidewalk in question in this case properly covered in the evening in which the accident occurred and prior?" The jury answered this in the negative. It appears from the evidence that the dimensions of the opening from the building into the sidewalk were in excess of the width of the covering, and that the several articles constituting the covering were not tied or bound together or permanently fastened over the opening, and did not afford adequate protection for the opening. Appellant admits that the Wells building standing in the street obstructed the light reflected from the lamp at the corner of Main and Monroe streets, and it is clear from the evidence that the light from Main and Washington streets, over two hundred feet away, did not sufficiently light the opening. The appellant, through its officers, knew of the

opening, but left its care and control to the owner
of the lot or the contractor of the new building thereon,
and knew that the opening prior to the evening of the
accident was sometimes covered and sometimes not
covered. Adequate protection should have been pro-
vided, which could have been done by erecting railings
or placing warning signals about the opening. Either
would have protected anyone from falling into the
opening, and would have made it more secure than
the covering. Appellant could have done this or com-
pelled the owner of the lot to do so. The finding of the
jury that the opening in the sidewalk was not prop-
erly covered on the evening of the accident and prior
is in harmony with their general verdict and is fully
justified by the evidence; and appellant's contention
in that particular is without merit.

It is finally urged that the damages are excessive.
On this question, the evidence is conflicting. If the
jury credited the evidence on the part of appellee,
then their verdict is clearly justified. Appellant ad-
mits that appellee sustained slight injuries. Appellee
and her husband testified that she had good health
before the injury, and that it was impaired after-
ward. Dr. Burlingame, a physician and surgeon
of thirty-five years' experience, testified that he ex-
amined appellee in March following the accident, and
found a partial retroversion of the uterus and in-
flammation of the Fallopian tubes and ovary of the
left side, attributed the conditions described to the
injury resulting from the accident; and added that
in his opinion it would require a surgical operation for
a possible recovery, and doubted a complete recovery
as the result of any character of treatment. On the
part of appellant there was evidence tending to show
that the condition testified to by Dr. Burlingame might
have existed at the time of the injury, and that it did
not exist to the extent stated. There was also evi-
dence of an operation for the removal of an abscess

back of the uterus, performed on appellee in 1896, and evidence tending to contradict that of appellee and her husband as to the state of appellee's health prior to the accident. From this appellant argues that her present condition is not solely attributable to the re-sults of the injury. While the damages may seem high considering the injury, they are not so high as to justify us in setting aside the verdict for that rea-son. The assessment of damages in this class of cases is so largely a matter of judgment and discretion of the jury, that courts will not set them aside unless it clearly appears that they are not justified or sus-tained by the evidence, or in cases where it is appar-ent that the amount is attributable to sympathy, passion or prejudice, or other improper motives on the part of the jury. We are not prepared to say from a consideration of all the evidence that this case should be reversed because of the amount of the judgment. Finding no reversible error in the record, the judg-ment of the trial court is affirmed.

*Affirmed.*