Theresa Miller and John Miller, Appellants, v. Henry A. Scandrett et al., Trustees of Chicago, Milwaukee, St. Paul and Pacific Railroad Company, Appellees.

Gen. No. 10,021.

Heard in this court at the May term, 1945. Opinion filed October 22, 1945. Released for publication November 12, 1945.

WING & PUKLIN, for appellants; ARTHUR L. PUKLIN, of Aurora, and EDWARD PUKLIN, of Elgin, of counsel.

EDWIN R. ECKERSALL, of Chicago, and ARTHUR L. PAULSON, of Elgin, for appellees; M. L. BLUHM, of Chicago, of counsel.

MR. JUSTICE BRISTOW delivered the opinion of the court.

This appeal comes from the circuit court of Kane county where judgment was entered for defendants and against plaintiffs in bar of action and for costs, which judgment followed a jury's verdict finding the issues for the defendants.

The errors assigned for reversal are: That the verdict is against the manifest weight of the evidence and against the law; that the trial court erred in denying plaintiffs' motion for a new trial; that the verdict was influenced by the misconduct of a juror and of a claim agent of defendants; and that the court erred in failing to discharge the jury within a reasonable time after their inability to reach a verdict, or to permit them to retire for sleep and rest.

Plaintiff, Theresa Miller, was driving an automobile in a northeasterly direction on Jackson street, near and outside the limits of Aurora, Illinois, toward and across the railroad tracks of defendants. The tracks and Jackson street intersected each other at approximately right angles. Plaintiff, John Miller, husband of Theresa Miller, was sitting in the front seat of the automobile. The time was near 6:30 o'clock p. m., November 1, 1941, and it was dark. An engine drawing six cars and a caboose was proceeding on said

track in an easterly direction, toward and across said street, at a rate of speed of 10 to 12 miles per hour. At this crossing the front end of the engine struck the left side of the automobile, injuring plaintiffs severely and damaging the automobile. The automobile was traveling at a rate of speed of about 10 to 12 miles an hour during the last 40 feet of travel.

At the intersection in question there were no lights or warning signals with the exception of the customary cross arms. Both plaintiffs had been over this crossing many times and were fully aware that they were approaching a railroad crossing. On a side track 39 feet south of the main track was standing a freight car and south of that car was a building which obstructed the view of plaintiffs to the west.

A careful reading of the voluminous record which contains more than 600 pages, discloses the usual conflict between the witnesses for the plaintiffs and defendants on the material charges of negligence and contributory negligence. We deem it unnecessary to detail the testimony of each witness and suffice it to say that we have reached the conclusion that the jury's finding and court judgment are not against the manifest weight of the evidence. On the issue of contributory negligence, it is clear that had the plaintiffs looked west after passing the side track, they would have seen the locomotive approaching, and in the space of 39 feet, travelling 10 to 12 miles per hour, the driver could easily have stopped the car and avoided the accident.

Appellants contend that the trial court should have discharged the jury within a reasonable time, or should have permitted them to sleep and rest. The case was submitted to the jury at 4:10 p. m. The jury returned its verdict at 11:45 p. m. This surely is not an unreasonable length of time for a jury to deliberate on a case which consumed the greater part of a week. *Chicago City R. Co. v. Shreve,* 128 Ill. App. 462, 478.

There is no showing of any kind to indicate that the court abused its discretion in not discharging the jury before it returned its verdict.

Furthermore it would be singular indeed for counsel to be allowed to profit by an error (if it be one) that he generated by his own conduct. The record discloses the following colloquy between court and counsel in course of the argument on the motion for a new trial:

The Court: Let me ask counsel if you personally did not speak to me three times and ask me not to let the jury go because you thought they might be coming in with a verdict in your favor if they were kept out long enough?

Mr. Puklin: I am sorry—

The Court: I am asking counsel that question.

Mr. Puklin: I am sorry that the Court has seen fit to bring into this matter the conversations we were having, which I am not permitted to contradict by showing in my own affidavit because I could not ask the Court to make any affidavit—

The Court: I am asking counsel if that is not a fact.

Mr. Puklin: I want to say for the record that we had quite a lengthy conversation that evening,—

The Court: On three different occasions did you not—

Mr. Puklin: —and the Court must have considered that this case was of enough importance so that he cancelled some personal engagement that he had for that evening in order to stay here to wait for the jury's verdict. I thought possibly the court reached his decision to keep the jury out because of that fact.

The Court: I am asking counsel if that was not the fact, if we did not have that conversation and if such a request was not made by him?

Mr. Puklin: I am not denying that, if the Court please.

The Court: All right.

The seven or eight hour deliberation of the jury was overheard by several persons. What transpired in the jury room was brought to the attention of the trial court by affidavits of two of appellants' counsel and an adult son and daughter, which were attached to the motion for new trial. These affidavits disclose that there were seven women on the jury, several of whom lived 4 to 12 miles from the courthouse, and some of whom were dependent upon bus service to return to their homes and that the last bus left shortly before midnight; that those women thus situated were more concerned with getting home than discharging their sworn duties as jurors; that they were heard to say repeatedly, "How long do we have to stay?" "How will we get home?" "What happens if we can't agree?" "We can't stay here all night," "I am getting tired, let's get this over with." It further appeared from the affidavits filed on behalf of appellants that one Joel G. Hunter was the foreman of the jury, and in him the defendants had an ardent advocate. He was reported to have read and reread instructions favoring the railroad, and often asserted, much to the discomfort of the lady jurors, that he would stay there locked up three days if necessary to secure a triumph of his views. It further appears without dispute that the jury on its first ballot stood seven to five for the plaintiffs, and at one time registered eleven to one for the plaintiffs, Mr. Hunter being the lone disciple of the cause that eventually prevailed.

The appellants contend that the foregoing circumstances evidence a gross miscarriage of justice and consequently they didn't receive a fair trial. It is true that plaintiffs must have suffered a shocking disappointment to find a turn of events in a jury room which effected such a complete reversal of sentiment. The

appellants cite no authority that would justify this court in disturbing a verdict upon such a showing. "If the arguments and discussion of a jury are open to attack by a group of eavesdroppers, a verdict returned by them would be of little value. If such were the case jury rooms would soon have loud speaking devices so that the soft and gentle spoken members of the panel would not be misunderstood, and rules would have to be enacted prescribing the exact number of listeners to which each litigant is entitled.

A further charge of misconduct is found in the affidavits of the daughter and son, Betty Miller and Lester Miller, of the plaintiffs. They assert that they saw, in course of the trial, Joel G. Hunter, the jurors heretofore mentioned, and Harold J. Barry, claim agent for the railroad, engaged in a whispering conversation in one of the hallways of the courthouse and that they saw them enter one of the toilets together. Both Barry and Hunter filed counter affidavits making a complete and sweeping denial of such charges.

Hunter's affidavit stated that he did not know any of the parties, attorneys or the claim agent, and did not know the case was on trial until he arrived at the courthouse; that he did not at any time during the time of the trial or any other time before the verdict was returned talk to or converse with any party to the cause or their attorneys, or with any person employed by the parties in respect to the case and facts involved, or any other matter, whatsoever. His affidavit stated that during the trial or thereafter he did not talk or converse with the claim agent with respect to the case and facts or with respect to any other matter, whatever; that he did not at any time speak to Barry, nor did Barry speak to him; that he knew nothing of the facts and had no interest at any time in the outcome of the trial.

The affidavit of Barry stated that he investigated the accident and was at the trial only to assist the

attorneys for the defense; that he left when the jury retired and did not return. In like positive language, Barry, in his affidavit, swore that he did not at any time talk or converse with any member of the jury on any matter, whatsoever. And specifically, that at no time during the trial did he talk with the juror, Hunter, with respect to any matter whatsoever, and that he did not at any time whatsoever speak with the juror, Hunter, nor did Hunter at any time speak to him.

██ Appellants have cited several cases in support of their claim that there had been tampering with the jury, by defendants. These cases are: *Cox v. Aetna Casualty & Surety Co.*, 261 Ill. App. 394, 402; *Jeneary v. Chicago & Interurban Traction Co.*, 225 Ill. App. 122, 132; *Bonnet v. Glattfeldt*, 120 Ill. 166, 178–179; *Mobile & O. R. Co. v. Davis*, 130 Ill. 146, 154; *Vane v. City of Evanston*, 150 Ill. 616, 626. We are in entire accord with the principles announced in each of those cases. Courts should be exceedingly vigilant and careful that there is no misconduct on the part of jurors that would reflect any question on the honesty of their performance. But upon examination of each of those cases we find therein the situation to be different from that of the case under consideration. Wherever a judgment has been disturbed by a reviewing court because of the misconduct of a juror, the evidence of such wrongdoing is clear and convincing, in fact in most cases it was uncontradicted.

██ ██ The language used by the court in the case of *Village of Genoa v. Riddle*, 132 Ill. App. 637, at page 639, can be profitably considered in light of the facts in the instant case, quoting—

"It is first contended that the trial court erred in not granting the motion for a new trial on the ground of the alleged misconduct of one of the jurors, in support of which several affidavits were read. Only two, however, bore on the question raised; that of Clark Strong, alleging that John Ollman, one of the jurors

empanelled to try the case, stated before any evidence was heard that he had his mind made up how he would vote, and that he was prejudiced against corporations; and the affidavit of the implicated juror which denied in the most emphatic manner the statements attributed to him. From all that appears, the affiants were equally credible. 'A party holding the affirmative of a proposition is required to maintain it by a preponderance of the evidence, which can never be the case where one of the two parties, both equally credible, makes an assertion which is denied by the other. The party having the affirmative under such circumstances fails.' *Broughton v. Smart,* 59 Ill. 440. Verdicts should not be set aside on mere suspicion that a juror has acted improperly. *Roe v. Taylor,* 45 Ill. 485. We hold, from a consideration of the affidavits, that it is not sufficiently proved that the juror whose conduct is now called in question made the statements attributed to him. To adopt appellant's contention, and set aside this verdict on what is little more than a suspicion of the juror's misconduct, would subject almost any verdict to a similar attack. While parties are entitled to, and should have, unprejudiced jurors, yet verdicts should not be vacated on a charge of the misconduct of a juror, except on well-defined proof of the misconduct.''

Certainly there is nothing in this record to indicate that more credibility should be attached to the affidavits of the children of the plaintiffs than the counter affidavits. The subject matter contained in Betty and Lester Miller's affidavit was not made known to anyone for some three weeks after the occurrence. Although the meeting of Hunter and Baker was allegedly in a public place where there was a great likelihood of many disinterested observers, none were offered to support the plaintiffs in their serious charge. If trial proceedings are to be made vulnerable to an attack, such as appears in this case, there will be no

end to litigation. In any case a disappointed or losing litigant could develop a group of affidavits which would cast suspicion upon any trial.

Other errors are assigned and argued but we regard them as of such unimportance that we will not prolong this opinion by discussing them.

The trial court saw and heard the witnesses; he heard the long and able argument of counsel in support of their motion for new trial; he did not leave his court room throughout the deliberation of the jury; he was in a much better position than a reviewing court to evaluate the charges of misconduct; he came to the conclusion that the verdict and judgment entered by him represented substantial justice. We are in accord.

*Judgment affirmed.*