(No. 32408.—

W. Eugene Dorris, Admr., Appellant, *vs.* James Barrett, Jr., *et al.,* Appellees.

*Opinion filed September 17, 1952.*

ELMER JENKINS, and LOREN E. LEWIS, both of Benton, for appellant.

HICKMAN & HICKMAN, and REA F. JONES, both of Benton, for appellees.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

This is a direct appeal from a judgment of the county court of Franklin County holding that title to certain real property was in appellee James Barrett, Jr., and dismissing the appellant's petition to sell real estate to pay debts and costs of administration.

The appellant, as administrator with will annexed of the estate of James Barrett, Sr., petitioned the county court for the sale of a residence property described as lot 103 Highland Addition to the city of Benton. This property was conveyed to James Barrett by warranty deed dated November 12, 1936, executed by James P. Mooneyham and Anna Mooneyham, his wife. The only question presented by this appeal is whether the finding of the county court that James Barrett, Jr., and not James Barrett, Sr., was the grantee in that deed is against the manifest weight of the evidence.

James P. Mooneyham is deceased. Anna Mooneyham testified that the property was sold and deeded to James

Barrett, Sr., that he was present when she signed the deed and that she had never seen James Barrett, Jr., before. Thomas J. Layman, a Franklin County lawyer and ex-county judge, who has honorably practiced his profession before the bar for almost half a century, testified that he represented James P. Mooneyham in a transaction involving the sale of a property in Highland Addition and that "Jay" Barrett, who was the elder James Barrett, left money with him for Mooneyham to close the transaction which was delivered to Mooneyham in the presence of James Barrett, Sr., and that he had no dealings with James Barrett, Jr.

The undisputed evidence shows that in the latter part of the year 1936 or early 1937 James Barrett, Sr., who was then unmarried, and James Barrett, Jr., and his wife moved into the property, and that thereafter it was remodelled and repaired; that James Barrett, Jr., and his wife lived there a short time and when he procured employment elsewhere they moved away leaving James Barrett, Sr., in the premises which he occupied and treated as his own until his death on the premises. In his last will and testament, executed December 31, 1940, James Barrett, Sr., specifically devised the property in question to his wife, Nancy, for her lifetime and at her death to two of his grandchildren. One witness testified that in 1946 he negotiated with James Barrett, Sr., for the purchase of the property but that he (Barrett) backed out before the deal was closed. The tax records disclosed that taxes for the years 1936 to 1941 were assessed in the name of J. P. Mooneyham; for the years 1942 to 1949 in the name of James Barrett, Sr.; and in 1950 the assessment was made in the name of James Barrett without further designation. The entries as to who paid the taxes show payment for the years 1936 to 1938 by James Barrett; 1939 by James Barrett, Sr.; 1940 and 1941 by James E. Barrett; 1942 by James Barrett, Sr.; 1943 and 1944 by James Barrett; 1945

to 1947 by James Barrett, Sr.; 1948 to 1950 by James Barrett.

Appellees James Barrett, Jr., and his wife Zenith Barrett were permitted to testify over the specific objection of appellant that they were incompetent under section 2 of the Evidence Act. (Ill. Rev. Stat. 1951, chap. 51, par. 2.) James Barrett, Jr., produced the Mooneyham deed, testified that he had had possession of it since it was made and delivered to him by the Mooneyhams; that he bought and paid for the property and for material for the repairs; that he was the grantee and the owner of the property, and that he had paid all the taxes on the property since he entered into a contract for its purchase. Zenith Barrett testified that James Barrett, Jr., bought and paid for the property; that he was the grantee in the deed; that she had taken the deed to the recorder's office and the deed was returned to her by the recorder. These parties were, of course, clearly incompetent to testify to such matters under section 2 of the Evidence Act and this testimony cannot be considered. (*Thompson* v. *Thompson,* 411 Ill. 232.) The trial judge recognized this and stated that he was ignoring the testimony of James and Zenith Barrett in arriving at his decision.

The only competent testimony introduced by appellees was the testimony of six witnesses in regard to alleged statements made by the elder Barrett to the witnesses during his lifetime, and the testimony of some of them that James, Jr., helped repair the property and paid some of the lumber bill. One witness testified that, in conversation with the elder Barrett about repairing the property, he indicated that the son was the owner and on one occasion he said, "Yes, the boy bought it and I am helping him to repair it." Mary Carnahan, sister of appellee James Barrett, Jr., testified that she was with her father during his last illness and that he then told her that the place was "Jim's" but that he wanted him to let his stepmother live

there as long as she lived. She further testified that she had heard her father on previous occasions say that James, Jr., had bought the property and that he was proud that his son had bought a home. Della Ramsey, mother-in-law of James, Jr., testified that she had had conversations with James, Sr., in which he told her James, Jr., had bought the property. Lyall Ramsey, brother-in-law of James, Jr., testified that he had a conversation with James, Sr., in 1948 in which he stated he thought he was going blind and he might have to move away from "Jimmy's" home. Palo Carnahan, brother-in-law of James, Jr., testified that in 1936 James, Sr., told him that the place was Jimmie's and he was living with him. Deward Newhouse, manager of the lumber company where the repair materials were purchased testified that there was an agreement whereby James, Jr., was to pay the bill and the property in question was to be James's when the senior died.

The testimony of these witnesses is not impressive. The statement of the witness Newhouse that the property was to be the son's when the senior died is contrary to appellees' position and indicates that the father and not the son owned the property at that time. The other testimony in regard to testator's declarations is vague, uncertain and subject to coloration by personal interest. Such evidence is not too highly regarded for the purpose of establishing real-estate titles.

On the other hand, the testimony of the witnesses Anna Mooneyham and Judge Layman was clear and positive that the elder Barrett carried on the negotiations, paid the money, and was present when the deed was made. These witnesses were not impeached nor their testimony successfully controverted. It is, rather, corroborated by the undisputed facts. James Barrett, Sr., remained in possession and exercised complete dominion over the property after his son and daughter-in-law moved away. The record is barren of any claim of ownership by the son during his

father's lifetime. The father negotiated for a sale of the property and specifically devised it in his will. It is also significant that the tax assessments were in James Barrett, Sr., and the records of the tax payments appear in the names of James Barrett, Sr., James E. Barrett, and James Barrett, while in not one instance is there any record in James Barrett, Jr. On November 9, 1950, James Barrett, Jr., procured, for a consideration of $200, a quitclaim deed from testator's widow, and on June 13, 1951, he procured quitclaim deeds from the remaindermen. This evidence was irrelevant to the issue of ownership of the property on the date of testator's death and should not have been admitted. Its purpose is also obscure as it seems to militate against rather than to support his claim of ownership under the Mooneyham deed, and his explanation that he procured the widow's deed to obtain possession is not persuasive.

Both parties to this appeal have cited numerous authorities, which we have examined, but the question here being purely a question of fact determined by the weight of the evidence, such authorities are not too helpful and no useful purpose would be served by an extended discussion of the rules of law applicable to this evidence.

Appellees contend that possession of the deed by James Barrett, Jr., raises a presumption that the deed was delivered to him by the grantor and only clear and convincing evidence can overcome that presumption; (*Harshbarger* v. *Carroll,* 163 Ill. 636;) that the burden of proof is on the party holding the affirmative and where the evidence preponderates against him or is equally balanced, the cause must be decided against the one holding the affirmative. (*Stevenson* v. *Marony,* 29 Ill. 532; *Broughton* v. *Smart,* 59 Ill. 440.) We do not disagree with these elementary principles, but we are of the opinion that the evidence here clearly and convincingly preponderates in favor of the appellant and that the finding of the trial court is manifestly against the weight of the evidence.

Appellees contend that they were competent witnesses under the provisions of section 3 of the Evidence Act. (Ill. Rev. Stat. 1951, chap. 51, par. 3.) That section applies only to books of account and similar records and clearly is not applicable here. *Standard Trust and Savings Bank* v. *Carlson,* 315 Ill. 451.

Appellant's petition for leave to sell the real estate here involved alleges that the quitclaim deeds from testator's devisees to appellee James Barrett, Jr., and the affidavit claiming ownership in James Barrett, Jr., are fraudulent and void and prays that they be expunged from the records as clouds upon the title to the real estate. That affidavit is not a part of the record before us and we therefore make no findings thereon. Appellant's prayer to expunge the quitclaim deeds from the record should be denied. There is no showing in the record that they are fraudulent or void. The grantors in those deeds, being the devisees, and their spouses, of the testator, were the record owners of the property, the deeds were made after testator's death and they had an interest in the real estate which they could convey. These conveyances have no effect upon the title of the testator or upon the title or rights which are by statute vested in the administrator of his estate.

Judgment will not be entered here for the reason that we are unable to pass upon appellant's prayer to expunge the affidavit from the record. The judgment of the county court of Franklin County, finding James Barrett, Jr., to be the owner of the real estate in controversy and dismissing appellant's petition, is reversed, and this cause is remanded to that court with directions to enter a finding that James E. Barrett, Sr., was the owner in fee simple of said real estate on the date of his death and an order granting leave to the administrator to sell said real estate for the payment of the claims and costs of administration as prayed in the petition.

*Reversed and remanded, with directions.*