(No. 4530–)

DEAN ACKLEY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 24, 1954.*

THOMAS C. BRADLEY, Attorney for Claimant.

LATHAM CASTLE, Attorney General; MARION G. TIERNAN, Assistant Attorney General, for Respondent.

WHAM, J.

This case involves a tort claim under Section 8C of the Court of Claims Law for injury to the person of

claimant, Dean Ackley, while an inmate of the St. Charles Training School for Boys at the Sheridan Branch of said school, which was operated by respondent. The said injury occurred on or about January 15, 1948, at which time claimant was a minor, sixteen years of age. .

The complaint filed herein alleges that claimant, while an inmate of the aforesaid institution, was assigned to work in the laundry room, and was directed by an employee of respondent to load wet clothes into an extractor, an electrically operated machine, which whirls wet clothes at a high rate of speed in order to remove the water therefrom. While performing said task, claimant's left arm was caught by the whirling basket of wet clothes contained therein, and torn from his body. The complaint alleges that claimant was in the exercise of due care for his own safety, and that respondent was guilty of one or more of several acts or omissions, namely: (1) Negligently and carelessly failed to equip the extractor with an interlocking device, which would prevent the basket of the machine from whirling when the cover was open; (2) negligently and carelessly failed to equip said extractor with an interlocking device to prevent the cover from being opened while the basket was in motion; (3) negligently and carelessly failed to equip the extractor with a cover over the basket; (4) negligently and carelessly failed to comply with the provisions of the Health and Safety Act, and the Health and Safety Rules of the State of Illinois then in effect, which Rules required such safety devices above referred to; and, (5) negligently and carelessly failed to properly instruct claimant in the use and operation of the extractor prior to allowing him to operate same.

Respondent contends that the extractor was equipped with a cover, and that claimant had been properly

instructed in its use prior to the accident. Respondent further contends that it was not negligent in any respect, and that claimant's injury was caused, or contributed to, by claimant's own negligence.

Respondent admits that the machine was not equipped with interlocking devices, which would have prevented the machine from operating when the lid was open, but contends that the absence of such devices did not constitute negligence on the part of respondent.

In such a tort action claimant must bear the burden of proving, not only that respondent was negligent, and that such negligence proximately caused his injury; but he must further prove that he, claimant himself, was in the exercise of ordinary care for his own safety at and immediately prior to the time of the injury. This is a fundamental principle, and one clearly required by the Court of Claims Law, as well as the common law of the State of Illinois. In *Transamerican Freight Lines, Inc.,* Claimant, vs. *State of Illinois,* Respondent, 18 C.C.R. 93, at pages 97 and 98, the Court stated:

"The elements of proof necessary in a claim under Section 8, Par. (c) of the Court of Claims Act as amended (Ill. Rev. Stats., 1947, Chap. 37, Par. 439.8) are that claimant must prove by a preponderance or greater weight of the evidence that the agent of respondent was guilty of negligence, which was the proximate cause of the damages sustained by it, and that claimant's agent was in the exercise of due care at the time of the accident."

We have considered the evidence in the record and the briefs of the parties, and note that only two persons. were present at the time of the injury in question—one was claimant, and the other Andrew Anderson, an employee of respondent.

Claimant testified that he and Mr. Anderson were working together in the laundry room, and that he took some wet clothing, which had just been washed, and

placed them in the extractor, which was not equipped with a lid. He then turned on the switch, and stood with his hands resting on the upper open edge of the outer drum of the extractor while the top of the extractor was open and not covered. The basket whirled at a great rate of speed, and one of the shirts in the extractor came up the side of the whirling drum, wrapped over the fingers of his left hand and around his arm, pulled him up on top of the extractor, and tore his arm from his body.

The testimony of respondent's employee, Andrew Anderson, conflicts with claimant's testimony. He testified that there was a lid on the extractor, and that he closed it prior to the starting of the extractor by claimant. He further testified that at no time did he open the lid after the extractor was started, and that the only two persons present in the laundry were claimant and himself. He stated that he did not see the actual accident happen, inasmuch as he was picking up an arm load of clothes from a nearby washing machine, and had his head turned for a moment. He stated that he heard a thud behind him, and when he turned around, claimant was on top of the machine, his arm was off, and the lid on the extractor was up. He further testified that he had personally instructed claimant in the manner of using the extractor, and had specifically told him to "put the cover down before starting the machine, and leave it down until the machine had stopped". He further testified that claimant had operated the extractor four or five times over a period of a week prior to the accident.

Although claimant contends he received no instructions in regard to the extractor, he admits spending approximately a week prior to the accident in the laundry room watching another boy operate it. He stated

that, although he was operating the extractor for the first time when injured, he felt that he knew enough about its operation to run it.

This extractor admittedly revolved at a very high rate of speed, namely, 1200 revolutions per minute, and certainly claimant knew, or should have known, that it operated at a high rate of speed from his previous observations, and knew, or should have known, that it was dangerous to place his hand in close proximity to the whirling portion while the top was uncovered and open.

If the testimony of Mr. Anderson is to be believed, it, in our judgment, would establish that claimant raised the lid, while the extractor was revolving at a high rate of speed, in violation of the instructions given him by Anderson. This would require an explanation from claimant as to his reason for doing so. In the absence of a proper explanation, we consider his conduct to be other than that of a person exercising ordinary care. Claimant's evidence reflects no explanation of such conduct, but rather, as we said before, is in direct conflict with the witness of respondent, Andrew Anderson.

In order to find that the facts surrounding the accident were as claimant contends, we would of necessity be forced to disbelieve the testimony of Anderson. There is, in our judgment, nothing in the record reflecting upon the credibility of Anderson, who, incidently, left state employment in May of 1948, nor does his testimony lead us to believe that the facts, as testified to by him, were inherently improbable.

We see no logical reason from the evidence offered by both parties why we should give any more weight to claimant's testimony than to that of Mr. Anderson.

In view of the above, the most which can be said for claimant's case is that the evidence is evenly balanced in regard to the question of due care.

In such a state of the record, we find that claimant has failed to bear the burden of proof required of this essential portion of his cause of action. In *Brady* vs. *Chaffee,* 163 Ill. App. 242, at pages 245 and 246, the court stated:

"The testimony of the parties to this case is in flat contradiction on the material issues of the case. There is no room for construction, and no chance to harmonize it. One has testified to the truth, and the other has not. Each had equal means of knowing the facts about which they testified. They were equally interested in the result of the suit. Neither was impeached, and they stood before the court equal in character. There is but one means by which this court can judge of their comparative credibility, and that is the well known test of the reasonableness of their stories. Measured by that test, we are forced to the conclusion that the story told by the plaintiff in error is the more reasonable. The story told by defendant in error, that, upon her politely greeting plaintiff in error, he should, without motive, provocation, justification, or excuse, and in the vilest terms, denounce her as a woman of the lowest character to which her sex can fall, is so inherently improbable as to weigh heavily against her credibility.

On the other hand, the story of plaintiff in error is told in an apparently candid, manly way. While not over stated, it is positive and to the point, as to facts within his knowledge, and as to such facts as he had no positive recollection about, he frankly says he bases his conclusions upon his custom and on his memoranda. There is nothing in his testimony that leaves the impression of falsity.

Assuming the two witnesses to be of equal credibility, it would still be necessary to reverse this case. An affirmative statement by one witness, met by a flat categorical denial by another, of equal credibility, does not meet the elementary requirement of the law that a plaintiff must make out his or her case by a preponderance of the evidence. *Broughton* vs. *Smart,* 59 Ill. 440; *Keyon* vs. *Hampton,* 70 Ill. App. 80; *Siegmund* vs. *Strackbein,* 140 Ill. App. 454."

To this same effect see also *Miller* vs. *Scandrett,* 326 Ill. App. 631, at page 638; *Bishop* vs. *Nikolas,* 320 Ill. App. 681 (abstract opinion); and *Caplow* vs. *Hershon,* 331 Ill. App. 267 (abstract opinion).

In *Garshon* vs. *Aaron,* 330 Ill. App. 540, the court,

in distinguishing the application of the above rule, said at page 546:

"Defendant's next contention is that the verdict is against the manifest weight of the evidence. The only testimony in the record bearing on the condition of the railing at the time of the occurrence is that of plaintiff and defendant, Jacob Aaron. In his reply brief defendant says that assuming that plaintiff and defendant Jacob Aaron were equally credible the plaintiff therefore has placed himself in a position where he comes within the time-honored rule that a party heard in the affirmative of a proposition is required to maintain it by a preponderance of the evidence, and this can never be the case when one of two parties both, equally credible makes an assertion, which is denied by the other, citing *Broughton* vs. *Smart*, 59 Ill. 440, and *Northern Trust Co.* vs. *Parker*, 205 Ill. App. 450. In the present case plaintiff's testimony was coupled with undisputed physical facts, which in our opinion make the cases cited by defendant inapplicable."

The record in the instant case reflects no such physical facts, or any matters or things, which would affect the application of the above rule.

Since this claim must be denied for the above reason, it will not be necessary to further prolong this opinion by discussing the other questions raised by the pleadings and briefs of the parties. The claim is hereby denied.